JUDGE DUVALL
delivered the opinion of tiie coort:
On the first day of June, 1836, Mrs. Mary J. Churchill, who was then a widow, executed to William Prather a deed of that date, for certain real estate of - which she was the owner, situated in the city of Louisville, to be held by the grantee “ upon the following trust: first, to permit.the said Mary Jane to enjoy the rents, issues, and profits of said ground during her life, separate and apart, free from the control or interest therein by any husband she may hereafter have. Second, after her death, to be held for the use and benefit of her son, Worden P. Churchill, and such other child or children as she may hereafter have, and to be conveyed to them in equal portions as they attain, provided they attain, the age of twenty-one years. Third, but should she die childless, or should her said son, and such other children as she may hereafter have, all die before attaining the age of twenty-one, then to be held for the use and benefit of, and be conveyed to, those who may then be the heirs of her, the said Mary Jane.”
Soon after the execution of this conveyance Mrs. Churchill intermarried with Charles M. Way, by whom she had one child, a son, named William H. Way.
In March, 1857, C. M. Way was appointed the statutory guardian of his son, and in April following he filed this petition, alleging that his ward was the owner, in remainder, of an interest in the real estate described in the foregoing deed; that Prather, the trustee therein named, had been removed, and N. Wolfe appointed trustee in his stead; that the ground on Chestnut street is almost entirely unproductive, and that a sale of a portion of it will redound to the benefit of his ward. He therefore prays a sale of so much of said ground belonging to W. H. Way and W. P. Churchill as will raise twenty-five ^thousand dollars.
Mary Jane Way, W. P. Churchill, (who had attained the age of twenty-one years,) and N. Wolfe, were made defendants, *421 and answered the petition, all concurring in the opinion that a sale of a portion of the property, as prayed for, would redound to the interest of the infant W. H. Way, and therefore consent to such sale. The answer of Mrs. Way was signed and sworn to before a notary public.
The commissioners appointed to report the value and profits of the estate of the infant, reported that the only estate owned by W. H. Way was the contingent interest created by the conveyance from his mother to Prather, the property embraced by that deed consisting of a lot on Market street, a lot on Bul-litt street, and a lot on Chestnut street, the whole valued at $79,795, yielding an income of only $1,500 per year, and the annual tax thereon amounting to $1,700.. They say “that the interest of W. H. Way would require a portion of the property on Chestnut street to be sold to rebuild on the 105 feet on Market street, and to put up such houses as would suit, would require fully the sum of $25,000, of which W. H. Way would have to furnish one half, or the sum of $12,500, and to that extent they recommend a sale.”
On the 1st day of May, 1857, the court rendered a judgment, directing the marshal to sell so much of the ground lying on Chestnut street, as would raise the sum of $25,000, for which purpose he was ordered to sell $12,500 of the interest of W. H. Way in said property, and $12,500 of the interest of W. P. Churchill therein; the proceeds of such sale to be applied by the petitioner to the erection of five or six brick stores and dwelling-houses, on the ground on Market street. The judgment further provides : “ But this decree shall not take effect until the petitioner, C. M. Way, shall give bond in the penalty of twenty-five thousand dollars, with good security, to the defendant, Wm. H. Way, conditioned faithfully to apply the proceeds of sale hereby authorized as herein described, and account for the same to the court.”
It appears from the record' that on the 21st May, 1857, the plaintiff “ proposed L. P. Yandell as surety on the bond required of him as guardian herein, who is approved by the court.” The bond referred to in this order is incorporated in the record, and bears date the 23d of May; but the record does not show *422 that it was executed in court, or was ever approved by the court.
The marshal afterwards proceeded to execute the judgment by a sale, at different times, of portions of the property mentioned. The appellants, Megowan and others, became the purchasers, and executed their bonds for the purchase money in conformity with the terms prescribed by the judgment. The bonds having matured, rules were issued against the appellants to show cause why they should not pay the money into court. They severally responded to the rules, but their responses were adjudged insufficient, and the rules made absolute. From that judgment they have appealed to this court, insisting here, as in the court below, that the sale under which they purchased was void, and conferred upon them no valid title to the property purchased by them, because,
1. The life estate reserved by Mrs. Way in her conveyance to Prather was not ordered to be sold, and did not pass by the sale.
2. That as to the interest of W. H. Way, they acquired no title under their purchase.
3. That the judgment and proceedings under which the sale and purchase were made, are irregular and void.
It is-deemed unnecessary to decide, in this case, whether the sale of real estate which had been conveyed or devised for the separate use of a married woman, prior to the adoption of the Revised Statutes, comes within the provisions of article 5, chap. 86, p. 593, Rev. Stat., which regulate the sale of lands and slaves of a married woman; or whether, as insisted by the appellees, the sale of such separate estate is within the general power and jurisdiction of a court of equity, and may therefore be decreed in any regular proceeding, without regard to the statute referred to.
Neither is it necessary to determine whether a contingent remainder is embraced by the statute authorizing a sale of the real estate of infants, “whether in possession, reversion, or remainder,” inasmuch as the judgment complained of is clearly erroneous upon other grounds.
It is contended by one of the counsel for the appellees that *423 the interest of W. .H. Way in the estate conveyed by the deed to Prather, is a vested remainder; that the words of the clause under which he claims refer merely to the futurity of possession occasioned by the carving out of the life estate of Mrs. Way, and have not the effect to protract the vesting of the estate until his arrival at the age of twenty-one years. This construction of the conveyance is wholly unwarranted by the plain import of its provisions. The language of the clause in question is: “ To be held for the use and benefit of her son, Worden P. Churchill, and such other child or children as she may hereafter have, and to be conveyed to them in equal portions, as they attain, provided they attain, the age of twenty-one years.” The interest thus created lacks all the essential elements of a vested remainder. “ The person entitled to a vested remainder has an immediate fixed right of future enjoyment — that is, an estate in presentí — though it can only take effect, in possession and pernancy of profits, at a future period.” (1 Cruise’s Digest, 181.) • It certainly cannot be said that W. H. Way has a present or immediate or fixed right to the future enjoyment of this estate. His right of future enjoyment is made to depend upon the express contingency of his attaining the age of twenty-one years; and, according to the well settled distinctions between the two classes of remainders, his interest must be regarded as a contingent remainder merely.
This being so, it results that the appellants did not acquire an absolute and indefeasible title to more than an undivided moiety of the land, in consideration of which their bonds were executed; and that, as to the other moiety, their title is liable to be defeated by the contingencies expressed in the deed. Those contingencies are so obvious that we need not stop to specify them. And it must be remembered that the appellants were the purchasers, not merely of the interest of W. H. Way in the land sold, but were purchasers of the land itself. The defect in the title was such as clearly entitled them to a rescission of the contract, however injuriously such rescission might affect other parties interested.
There is another ground upon which the appellants were *424 entitled to the relief they claimed. In view of the statutes regulating the sale of infants’ real estate, as heretofore expounded by this court, the judgment in this case, and all subsequent proceedings under it, must be pronounced void.
By the Revised Statutes, (sec. 2, art. 3, p. 592,) it is explicitly declared, that “ before a court shall have jurisdiction to decree a sale of infants’ lands,” the guardian of such infant must execute a covenant stipulating a faithful discharge of his duties under the act, and under any order or decree in pursuance thereof; and that if the guardian fail to give the covenant as required, the interest of such infant shall not be sold, “ and any decree, sale, or conveyance thereof, shall be void.” The execution of the covenant by the guardian is thus made one of the conditions upon which the jurisdiction of the court depends, and, of course, a previous compliance with such condition is necessary to give validity or effect to any decree or judgment for the sale of the estate.
Was this condition complied with in this case ? The judgment, as already stated, was rendered on the 1st day of May. On the 21st of the same month Yandell was approved as the surety of the guardian, and the bond, as copied into the record, is dated the 23d of May. It is clear, therefore, that at the date of the judgment no covenant had been given, as required by the statute, and that, for that reason, the court had no jurisdiction to decree the sale. There is no escaping this conclusion. The subsequent execution of the covenant cannot be regarded as having the retroactive effect of conferring a jurisdiction which did not exist at the time the judgment was rendered.
The case of Barber’s adm’r vs. Hopewell, &c., (Summer Term, 1858,) was very similar to the one now before us. In the opinion in that case, it is said that the language of the statute referred to is clear and explicit, and that “ a rigid enforcement of the' rule which it prescribes is demanded by the most obvious considerations of policy, and no relaxation of it can be tolerated by the courts without greatly jeopardizing the interests of the defenseless class for whose protection it was •adopted. The guardians of two of the infants failed to give the required covenant before, or even at the time of the rendi *425 tion of the judgment. The consequences of such failure, as declared by the statute, are, that the court had no jurisdiction to order the sale, and that the judgment, and sale under it, are alike absolutely void. Nor is the effect of such failure at all obviated by the execution of a covenant by the guardian six months afterwards. It might be urged with as much propriety that a covenant given two years afterwards would answer the requirements of the statute, and give legal effect to a void title acquired under a void judgment and sale. The statute peremptorily declares that the execution of the covenant is a precedent condition, upon the performance of which the jurisdiction of the court depends.” (Carpenter vs. Strother's heirs, 16 B. Mon., 296; Barrett vs. Churchill, 18 B. Mon., 391.)
The principle settled by these authorities is conclusive of this case, and we are by no means disposed to modify or depart from it. The provision contained in the judgment, that “ it shall not take effect” till bond be given as therein prescribed, does not at all exempt the case from the operation of the principle. The court had no jurisdiction or power to render any judgment for a sale of the land, because the bond required by law had not been executed, and for that reason the entire judgment was a nullity. The sale was made under this void judgment, and is therefore void also. Besides, this provision for the future execution of the bond is itself clearly erroneous. It authorizes the bond to be executed in pais, and directs that it shall contain stipulations wholly variant from those prescribed by the statute. Neither does it appear from the record that the bond was, in fact, executed in court, or that it was ever approved by the court. The copy found in the record is the only evidence before us that it was ever executed at all. When and where it was executed, or before whom it was acknowledged, if acknowledged at all by either of the obligors, does not appear from the record. Whether these errors are such as would of themselves be sufficient to invalidate the judgment, need not be determined.
Upon the grounds mentioned, we are satisfied that the judgment, and the sale made in pursuance of it, are void, and that *426 tbe appellants are entitled to the relief sought by them in their response to the rule.
Wherefore, the judgments are reversed, and the cause remanded with directions to discharge the several rules against the appellants, and for further proceedings in conformity with this opinion.