## Fitler *against* Maitland.

It is the secrecy that attends the retention of possession by the vendor in a bill of sale, that makes it fraudulent against his creditors, and not the giving of false credit.

A voluntary assignment in trust for creditors stands, under our statute, on a different footing from a bill of sale; for the retention of possession by the assignor does not make it fraudulent and void when it has been duly recorded, appraisement made, and other requisitions of the law complied with.

THIS was an action against Daniel Fitler, Esq., sheriff of the city and county of *Philadelphia,* for making a false return of *nulla bona* to a writ of *fieri facias* issued by the plaintiff, Maitland, on a judgment recovered by him in the District Court for

the city and county of Philadelphia against Emmor Kimber, Jun. It appeared by the evidence that Kimber, a hatter, made an assignment of his goods, consisting of hats, &c. dated the 2d July 1841, to F. Samuels, who published the assignment, and an appraisement and inventory were made, and he gave bond, and was duly qualified as assignee. The assignment was regularly recorded. Samuels sold the goods on the 1st of September 1841, to Robert Stackhouse, who paid him in cash $857.06. The goods remained in Kimber's store, No. 38 North Fourth street, from the assignment till the sale. Samuels left Kimber in possession, to make sales for cash for whatever he could sell, and account to Samuels; and he did sell and account to him. Samuels delivered possession of the goods to Stackhouse, on the sale to him. The word " agent" had been added, on the sign, to the name of Kimber. Kimber became also agent for Stackhouse under a power of attorney executed September 2d 1841, to take the goods and sell them for cash, and pay at the end of the year. The money with which Stackhouse purchased came from Kimber's friends, and was advanced by them. The sheriff's officer went, on the 7th October 1841, and saw goods in the store, but on receiving notice, returned the writ, on the same day, *nulla bona.*

The Judge charged the jury as follows: The question is, whether on the 7th October the goods in the hands of Kimber were subject to execution under *fieri facias.* The law of Pennsylvania is well settled, that where possession of goods is retained by the assignor, the title is not so altered as to prevent the levy of an execution. Retention of possession is an absolute badge of legal fraud. If you find that Kimber retained possession of the store and goods after his assignment to Samuels, and up to the time when the levy might have been made, under the plaintiff's execution, ostensibly in the same manner as he had it before the assignment, your verdict should be for the plaintiff; and if the value of the goods so retained was equal to the amount of the judgment directed to be levied, you should assess damages to that amount; and if the goods so retained were of less value than the amount of the judgment to be levied, then to the extent of such lesser value only.

Errors assigned:

1. The court erred in charging that when possession of goods is retained by the assignor, the title is not so altered as to prevent the levy of an execution.

2. In charging that retention of possession is an absolute badge of fraud.

3. In charging that if they found that Kimber retained possession of the store and goods after his assignment to Samuels, and up to the time when the levy might have been made under the plaintiff's execution, in the same manner that he had it before the assignment, their verdict must be for the plaintiff.

[Fitler v. Maitland.]

*J. C. Hare*, for plaintiff in error, referred to *Mitchell* v. *Willock*, (2 *Watts & Serg*. 253); *Wager* v. *Miller*, (4 *Serg. & Rawle* 117).

*Waln*, contra.

The opinion of the Court was delivered by

Gibson, C. J.—The reason no more was decided in *Mitchell* v. *Willock* than that the assignment was not avoided by retention of possession during the period for giving bond, was that the case called for no more; and we went no further. The entire principle of the case before us, however, was settled by the judgment in *Thompson* v. *Watmough*, which was argued at the last March term, but not reported, because the Judges present were equally divided in opinion; and Justice Huston, to whom a written opinion was furnished, signified his concurrence with Justice Rogers and myself, by letter, in vacation. As these assignments had been cut up by the recent bankrupt law, which was expected to be permanent, the decision seemed to be useless t ɔ the profession, as a precedent, and I directed the judgment to Le entered without further consultation, and without assigning the cause to a particular Judge to prepare an opinion. The reason which governed the majority, was, that an assignment of the sort is not susceptible of secrecy, like a bill of sale, which, without a notorious and *bonâ fide* transfer of possession, might be set up or suppressed at the pleasure of the parties, as events should make it expedient; but that it is a public act, like a sale on an execution, which is sanctioned by the law, and regulated by the supervision of a court of justice, so as to exclude the possibility of fraud. Such was the opinion of the court then, and such it is still. [In *Myers* v. *Hervey*, (2 *Penn. Rep.* 481), we held that retention of possession by the former owner of a chattel sold at sheriff's sale, is not an index of fraud, because such a sale is the act of a sworn officer under the control of a court; and there can no more be a sham sale, by a general assignment, than there can be by an execution. The recording of the instrument within thirty days, gives not only notice to the creditors and the world, but such publicity to the transaction as puts it out of the power of the parties to suppress it. The trust becomes fixed by it, and the trustee may be forced to execute it or be removed. That obviates the real objection to a bill of sale without transfer of possession, which may be made a sale or no sale, as the interest of the parties may dictate. It is the secrecy of its nature, and not the false credit it gives to the vendor by a deceptive appearance of ownership, that makes it inconsistent with the policy of the law; for every bailment gives the same credit, but every bailment is not forbidden.] But by the statute which regulates these assignments, the assignee is bound also to file a sworn inventory of the effects in the Prothonotary's Office; and these are to be appraised by persons appointed by the court — precautions

[Fitler v. Maitland.]

that make it impossible for the assignor to withdraw any part of the property from the trust, even by connivance of the trustee, or to cover anything but the specific effects by it. Still further. The assignee gives bond, with sureties, for the faithful execution of the trust, and consequently for the faithfulness of his agents, including the assignor, where he is one; and to complete this circle of defences against fraud, he is bound to settle an account and answer interrogatories on oath. Do not these precautions insure a faithful administration of the fund even in the possession of the assignor; and do they not seem designed to allow him to participate in it? In the matter of *Darlington's* assignment, which was before us at the last term for the Western District on a question of commissions, not worth being reported, the assignor, an extensive wholesale merchant, had remained in the custody and charge of the effects for years, to collect the debts, dispose of the stock, and close the concern; and it was conceded that thousands of dollars had been saved to the trust by his industry, integrity and skill. Is not this a strong argument against an interpretation which would have excluded him? Where the effects consist of stock in an extensive business, any other agent, properly qualified by familiarity with its details and by general experience, would seldom be found willing to abandon his own pursuits, untempted by the offer of a commission which no court would allow. It would frequently be disastrous to the creditors, were the assignor excluded from the management and care of the property; and it would be more so, could they be deprived of the benefit of the trust by the blunder or supineness of the trustee. These considerations induce us to think that assignments in trust for the benefit of creditors, were intended to be governed, not by the statute of the 13 *Eliz.*, but by our own statute particularly adapted to them. In the case before us, then, the property in the goods having passed from Kimber by the assignment, could not, by any conceivable operation of law, be revested in him for the laches of a purchaser from his assignee. But there was, in truth, no laches; for if the assignee might leave Kimber in possession without endangering the trust, why might not the same thing be done by a purchaser from the assignee, who succeeds to his title and stands in his place. If the goods could not be seized by Kimber's creditors before the sale, they could not be seized after it; and as there was no property in his hands to answer the execution, the return of *nulla bona* was strictly true.

                                                Judgment reversed.