# Klapp's Assignees *versus* Shirk.

A voluntary assignment for the benefit of creditors in the manner authorized by law, is not avoided by the property being left in the possession of the assignor. To avoid the deed, the fraud must be *in the assignment itself*. On the delivery of the deed the property in the goods vests in the assignees, for the benefit of creditors, and no subsequent fraudulent dealing between the assignor and assignees, can re-invest the goods in the assignor, or render them liable to levy as his property; the execution creditor stands in the same position as the assignees, and there was no bona fide purchaser a party to the suit.

ERROR to the Common Pleas of *Lebanon county*.

Feigned issue. Josiah H. Klapp, on the ninth day of June, 1849, executed a voluntary deed of assignment for the benefit of his creditors without preference, to Daniel Klapp and Jacob Miesse, who on the same day accepted the trust; and on the 23d day of June following filed their bond, the security of which having been approved; and also on said day, an inventory of the estate of said assignor, so far as the same came to their knowledge. On the 30th day of June, 1849, William Shirk, the judgment creditor, had a *fi. fa.* issued out of the court of Common Pleas, upon which *fi. fa.* the sheriff on the same day levied upon personal property of said assignor, and had the same sold; the amount raised on said sale was paid into court, and a feigned issue directed to try whether the money belonged to the assignees or William Shirk, the execution creditor. The property sold on the execution had been removed by the assignor, put on a Union Canal boat to be conveyed to Reading. Before the sale the assignees notified the sheriff not to sell the property levied on, since the same belonged to Josiah H. Klapp, and passed under the deed of assignment to said assignees, for the benefit of the creditors of said assignor.

PEARSON, J., stated in his charge that "the assignment and subsequent proceedings are regular and conformable to law so far as appears on their face. The defendant levied on certain property belonging to the assignor at the time of the assignment, had a sale made by the sheriff, and this issue is directed to ascertain who is entitled to the money. It appears that appraisers were appointed by a judge of the court, who proceeded in presence of the assignor and assignees to make an appraisement of the effects, and it also appears that the assignees had certain articles appraised to be delivered over to the assignor, under the supposition that he was entitled to retain all such as were exempt from execution.— They gave over to the assignor what they had appraised to the value of thirty dollars, and he held and retained them for his own

use and benefit. In making that appraisement the most gross want of care was manifested. . Chests, trunks, a bureau, book-case, &c., were appraised without opening or examining their contents. The appraisement list shows all those commodities appraised at about half the price the empty articles brought at sheriff's sale, and it is in proof that they were all filled with valuables. All the property remained in the possession of the assignor for a short time, and when he was about to remove to Reading, one of the assignees went there, as he declared, to see that nothing was taken by the assignor except what had been appraised to him, and those he was permitted to remove as his own. They were placed on a canal boat by him and started in the direction of Reading, and when near the county line were seized by the sheriff on a *fi. fa.* issued at the instance of the defendant. The sheriff there set apart for the use of Josiah H. Klapp all the articles exempt from execution, and sold the balance for the sum of $197. Previous to the sale notice was given to the sheriff that plaintiffs claimed the property under the assignment.

"On this state of facts several questions of law have been suggested to the court.

"The defendant contends that the whole transaction is fraudulent, that the assignment was colorable, and intended as a means of placing the property of J. H. Klapp out of the reach of his creditors for his benefit.

"Of the question of actual fraud you are the constitutional judges. If the object was honest, the design to 'have the effects equally and fairly distributed among all the creditors, it was meritorious and proper. If dishonest, and done with a view of securing the effects from seizure and retaining them in the hands of the assignor, to enable him to carry them off for his own benefit, without accounting for them by the assignees, it is void. That fraud if it exists would taint the whole assignment. But the question does not necessarily arise in this case. It seems that through some mistake or misapprehension of the law, the assignees had the property before referred to appraised for the assignor, and gave the same over to him to hold as his own. It was removed by him as his own, with the consent of the assignees, and in that situation was levied on by the sheriff. It is very clear that the assignees had no right to cause any of the goods to be appraised for the benefit of the assignor, but if they did it and gave them to him for his own use, permitted him to remove them as his own, they were subject to levy at the suit of his creditors, and the assignees would have to account for them under the assignment.— They had given them to the assignor to convert to his own use, and they have no right to complain that they were levied on by the sheriff. If you are satisfied that the assignor fraudulently concealed the goods from the assignees, that they did not know

that he had kept back the articles levied on, that they did not know what was taken or retained by him, that would present quite a different question. The property would vest by the assignment, and they could take it whenever they could find it, or sue those who wrongfully withheld it, and of that you must judge. But if they carelessly, negligently or intentionally gave over to the assignor six or seven times as much property as he had any right to retain, even under their mistaken construction of the law, and then connived at or assisted him to get them out of the reach of his general creditors, not intending to account for them themselves as assignees, they have but little cause to complain of the more vigilant creditor who finds out the articles and seizes them by his execution. You are the sole judges of the fact, and whether there was fraud or not; and if you are of opinion the whole assignment was a contrivance to defraud creditors and give the assignor the benefit of the goods, your verdict will be for the defendant; but this you should not decide upon slight evidence, and there is certainly but little here. If the plaintiffs voluntarily gave over the goods to J. H. Klapp as his own, even under a mistake in law as to his rights, they cannot complain of their seizure; and if their object in giving them was to benefit him at the expense of his creditors, they were lawfully seized and sold, and your verdict would be for the defendant. If the assignor practised a fraud on the assignees, took away goods they never intended him to take, concealed them from his assignees without any connivance on their part, your verdict must be for the plaintiff. The whole question is left with you with the instructions before given."

To this charge the plaintiffs excepted.

The jury found for defendant.

The errors assigned will appear from the arguments of counsel and the opinion of the Supreme Court.

The case was argued by *T. M. Bibighaus* and *Levi Kline* for plaintiffs in error, who contended, *inter alia*, that the assignees had thirty days to file an inventory, and that the execution issued within that time; that an assignment for creditors accepted by the assignees is vested for the benefit of creditors, 4 *Barr* 274; and that it is error to permit a jury to pass upon a matter of fact of which there is no evidence, 8 *Watts* 385.

*J. W. Ulrich* For defendant.—The question whether the goods were honestly or fraudulently left in the possession of the assignor, and to be removed by him, was properly referred to the jury. If the possession and removal were collusive and fraudulent, it avoided the deed as to the interest intended to be defrauded, 5 *Watts* 404; 6 do. 93; 10 *S. & R.* 428.

[Klapp's Assignees *v.* Shirk.]

The opinion of the court was delivered by

Rogers, J.—The assignment, so far as appears on the face of the instrument, is acknowledged to be regular in all its parts. · The requirements of the act have, been complied with by placing the assignment on record, and making an inventory and appraisement of the property assigned. Although the property was left in the possession of the assignor, yet that does not avoid the assignment if the requisitions of the law are complied with. It is decided that the retention of the possession of goods by the· assignor, after a voluntary assignment in trust for creditors, with the permission of the assignees or his vendees, does not make the transfer óf the goods fraudulent *per se*, Fitler *vs.* Maitland, 5 *W. & S.* 307; Seal *vs.* Duffy, 4 *Barr* 274. Admitting these cases to be sound, the defendant contends the whole transaction is fraudulent; that the assignment was colorable, and intended as a means of placing the property of the assignor out of the reach of his creditors. In answer to this point the court charged the jury, "that if dishonest, and done with a view of securing the effects from seizure, and retaining them in the hands of the assignor, to enable him to carry them off for his own benefit, without answering for them by the assignees, it is void." That the charge is unexceptionable, but in its application to this case it must be borne in mind that to avoid the deed the fraud must be in the concoction of the transaction, in the assignment itself. Unless this be so, the goods *eo instanti* the deed is delivered vest in the assignees for the benefit of the creditors. It is clear that no subsequent fraudulent dealings or acts between the assignor and assignees can re-vest the goods assigned in the assignor, or have a retrospective effect, so as to avoid the assignment itself. This is ruled in Seal *vs.* Duffy 4 *Barr* 274, where it is held that an assignment for creditors once accepted by the assignee is vested .for the benefit of creditors, and a subsequent renunciation does not affect the validity of the conveyance. The question of fraud, the *quo animo* of the parties, the court refers to the jury, instructing them that they were the sole judges of the facts whether there was fraud or not, and if they were of opinion the whole assignment was a contrivance to defraud creditors, and give the assignor the benefit of the goods, they should give a verdict for the defendant; but that they should not decide on slight grounds, and that there was but little evidence here. Of the last phrase it would seem the plaintiff in error has a right to complain, for after a careful examination of the evidence, I perceive none whatever which bears on the allegation of fraud in the assignment itself. There is nothing that I have observed calculated to raise a suspicion that the assignees, whatever may have been the covert design of the assignor, intended any thing more than the deed purports, viz: an equal division of the debtor's property among all his creditors. If there

was any improper conduct or fraud, it took place after the assignment was accepted by the assignees, when the property was appraised, and in permitting the assignor, with the erroneous notion he was entitled to it as exempted by law, to retain a certain amount of property. But admitting that Miesse, one of the assignees, who alone was present, was privy to and cognizant of the fraudulent concealment of certain property, as it would appear by the wife of the assignor, and its under valuation by the appraiser, of which however there is but slight proof, we must consider the charge in another aspect. Were they right in instructing the jury that if the assignees carelessly, negligently or intentionally gave over to the assignor six or seven times as much goods as he had any right to retain, under a mistaken construction of law, and then connived at or assisted him to get the same out of the reach of his general creditors, not intending to account for it themselves as assignees, they have but little cause to complain of the more vigilant creditor, who finds out the articles and seizes them himself. There is no doubt this instruction would be correct, if the assignees were alone the parties, but the learned judge has omitted to observe that in this case it is not the assignees alone, but the beneficiaries that are interested in the controversy. The general creditors claim the proceeds of sale, because the goods were transferred to the assignees for their benefit. They contend that no fraudulent act of theirs can divest their right; that they have the privilege of looking to the assignees personally or to the property itself. It must be remembered there is no *bona fide* purchaser in the way of the creditors. Can it be tolerated that a trustee may be permitted of his own mere will to divest the beneficiaries of their property without their consent, either by gift or fraud? A donee or covinous grantee acquires no property by the transfer as against them, whatever right he may obtain against the other donor or fraudulent grantor. A contrary principle would be most disastrous. It would lead to fraudulent combinations between insolvent trustees and unprincipled men, enabling them by such contrivances to sweep into their own pockets the property of minors unable to protect themselves, or unwary adults who have incautiously confided in their integrity. The beneficiaries may if they please pursue the goods in the hands of the donee or fraudulent grantee, or take their remedy against the trustee, or if necessary he may compel both to disgorge their ill gotten gains. In conclusion, I must remark that the plaintiff, so far as the proceeds of the goods are concerned, stands in the same position as the assignor. If the assignor was not the owner of the goods his creditor cannot claim the proceeds. The issue was directed to try to whom the property belonged.

Judgment reversed, and a *venire de novo* awarded.