WALTERS & WALKER, FOR USE OF WILLIAM C. GATEWOOD, APPELLANTS, VS. THOMAS L. WHITLOCK, APPELLEE.

1. A transfer of personal property, including choses in action, rights and credits, valid where made, will be recognized by our Courts, provided it be not contrary to good morals nor repugnant to the policy and positive institutions of the State.

2. There are no laws in Florida prohibiting a citizen of another State from a free disposal of his personal property, situated here, for honest purposes and without fraud.

3. A *voluntary* assignment by the owner to an assignee in trust for the benefit of creditors, made in the State of South Carolina and valid by the law of that State, and which, if made in Florida with the intention of being used here, would have been considered valid in this State, will operate upon property situate in this State.

4. In such assignments, the rule of transfer is the same in all choses in action, whether the same be an *open account* or promissory note.

5. Notice to the debtor is not necessary to a delivery and transfer of an open account thus assigned.

6. Fraud for want of delivery of possession of choses in action by the assignor to the assignee under such assignments is a question of fact to be determined by a jury in a cause instituted in common law Courts.

7. An assignment for the benefit of creditors, executed in another State, valid by the laws of that State and valid by the laws here, will be enforced by the Courts of this State against a subsequent attachment, although said attachment may be issued by one of our own citizens, and an open account due from a debtor to the assignor attached, and garnishee process issued previous to *notice* of said assignment to said debtor, *unless notice is required to be given by the terms or necessary effect of the assignment itself.*

8. Notice to the *debtor* of the assignor in such case (unless required to be given as aforesaid) is only necessary to prevent the debtor from dealing with the assignor so as to affect the rights of the assignee.

9. Where debtor of an assignor is garnisheed by virtue of an attachment issued subsequent to the assignment, and receives notice of the assignment, *pendente lite,* he should avail himself of the assignment in discharge by answer to the garnishee.

This case was decided at Tallahassee.

Appeal from Madison Circuit Court.

FORWARD, J., who delivered the opinion of the Court, read

the following statement of the facts of the case prepared by himself:

The facts of this case, as appears by the record, are thus:

On the 7th day of April, A. D. 1854, the said Walters & Walker made and executed a *voluntary* deed of assignment in the city of Charleston, in the State of South Carolina, of certain property, real and personal, book accounts, notes, bills, choses in action of them, the said Walters & Walker, whether the same were then due and owing by persons in South Carolina, Georgia, Florida, Alabama or elsewhere, and *all their right, title, interest, estate and property therein,* to the said William C. Gatewood, to have and to hold the same in trust for the creditors of said Walters & Walker, as therein specified. That said deed of assignment may be seen, it is set forth at full length:

"Know all men by these presents, that we, E. Wilmot Walter, George H. Walter and Richard Walker, in consideration of the sum of five dollars, to us paid by William C. Gatewood, the receipt whereof is hereby acknowledged, have and each of us hath, and do and each of us doth, by these presents, assign, transfer, grant, release and set over unto the said William C. Gatewood all and singular one-eighth interest or share in all that wharf property known as Boyce and Company's wharf, subject to a mortgage from George H. Walker and R. T. Walker to the Master in Equity, James Tupper, Esq., for part of purchase money; also two hundred shares in the Fireman's Insurance Company, of Charleston, standing in the name of E. Wilmot Walter in trust for Walters & Walker; also fifty shares in the Planters Bank of Fairfield, standing in the name of Walters & Walker; also three-eighths interest or share in the brig Mary Ann, of Charleston; also house and lot in the town of Rome and State of Georgia, purchased by Walters & Walker from L. A. Allen; also one negro man slave named Prior, now in the State of Georgia; also two farm

lots and buildings near the town of Rome, in the State of Georgia, purchased from Joel Marable; also all bales, bags and lots of cotton upon which advances have been made by us, whether the same are now in our possession or are under consignment to us; also all and singular the debts, balances, notes, bills, bonds, mortgages, books of account and choses in action of all and every kind whatsoever to us belonging, whether the same be due and owing by persons in South Carolina, Georgia, Florida, Alabama or elsewhere, and all our right, title, interest, estate and property therein: To have and to hold, take and receive the same unto the said William C. Gatewood, his heirs, executors, administrators and assigns, upon and for the trust, interest and purposes hereinafter declared, to wit: upon trust that he shall and do, with all convenient speed and in the most advantageous manner, make sale, dispose of and convert all and singular the said estate and effects, real and personal, into money, and stand possessed of the same upon trust, in the first place, to pay and discharge all costs and charges attending the preparing and recording of these presents and of a certain deed of release hereinafter mentioned, and also the charges and expenses to be incurred in the execution of the trust herein created; and upon trust, in the next place, to pay and discharge all notes, bills or other liabilities of the said William C. Gatewood and of Dr. Eli Geddings upon our account, and to indemnify and save harmless the said William O. Gatewood and Eli Geddings from and against all endorsements or liabilities for and on account of us or any of us, the said moneys to be applied rateably and proportionably, and without priority or preference, between them; and upon trust, in the next place, to pay James S. Gibson the sum and sums of money loaned by him to the said Walters & Walker, amounting to about nine thousand dollars, with the interest due thereon; and upon trust, in the next place, to pay E. W. Charles, of Darlington, the sum and sums of

money due him by us, amounting to about fifteen hundred dollars; and upon trust, in the next place, to pay Abram Van Buren, of Richland District, the balance of account due him by us, amounting to about seven thousand dollars; and upon trust, in the next place, to pay William R. Ryan the amount due him by us, for money loaned, amounting to about one thousand dollars; and upon trust, in the next place, to pay Marcus Reynolds, of Statesburg, the balance of account due him by us, amounting to about two thousand dollars; and upon trust, in the next place, to pay William Aikin, of Charleston, the balance due him of about twenty-two hundred dollars; and upon trust, in the next place, to indemnify and save harmless J. L. Thompson, of New York, from all liabilities and damages on account of his acceptance of our drafts, amounting in the whole to about seventeen thousand dollars; and upon trust, in the next place, to pay Payne and Bickley a balance due them upon open account, and note, amounting to about eleven hundred dollars; and upon trust, in the next place, to pay Hayne and Yates a balance of account due them of about three hundred dollars; and upon trust, in the next place, to pay M. R. Singleton whatever balance may be found due to him upon a settlement of account and liabilities between him and us; and upon trust, in the next place, to pay, or cause to be paid, rateably and proportionably and without any priority or preference, the claim and demand of the several persons, creditors of the said Walters & Walker, and of any or either of us, who shall on or before the first day of June next ensuing, and by the noon of that day, sign, seal and deliver to the said Walters & Walker, and each and every of us, a full and clear acquittance and discharge of and from their respective claims and demands, so that we and each of us, the said Walters & Walker, shall thenceforth be from them forever discharged and released; and, lastly, in trust to pay or cause to be paid the residue of said

money which shall remain after payment and satisfaction of the last mentioned debts into and among, rateably and proportionably and without priority of preference, *all others* the creditors of the said Walters & Walker; and we, the said Walters & Walker do hereby appoint the said William C. Gatewood our lawful attorney irrevocably, in our name or otherwise and upon and for the trust aforesaid, to demand, sue for, recover and receive all and singular the premises assigned and released in trust, and upon the receipt of the same to give the necessary acquittance, to compound for the same, or any part thereof, or settle the same by arbitration, and generally to do and execute all things necessary or proper to effect the interest of these premises or presents; and the said William C. Gatewood is hereby fully authorized by and with the consent of a majority in interest of the creditors of the said Walters & Walker, or of the agent of said creditors, should one be duly appointed, to make partition and division of all the real estate herein assigned with the other part owners thereof respectively; and the said William C. Gatewood, for himself, his heirs, executors, administrators and assigns, doth hereby covenant and agree to and with the said Walters & Walker that he, the said William C. Gatewood, shall and will from time to time and as often as any monies shall by reason of these presents come to his hands, hold and apply the same upon the trust and in the manner hereinbefore expressed and declared concerning the same.

"In witness whereof, the parties to these presents have hereunto set their hands and seals, this seventh day of April, in the year one thousand eight hundred and fifty-four, and in the seventy-eight year of Independence.

E. WILMOT WALTER, [Seal.]
GEO. H. WALTER, [Seal.]
R. T. WALKER, [Seal.]
WM. C. GATEWOOD, [Seal.]

"Sealed and delivered in presence of Stephen E. Pelot, George Reid."

Which said instrument was recorded in Charleston on the 8th day of April, A. D. 1854; that said William C. Gatewood, as such assignee, on the 2d day of April, A. D. 1855, instituted a suit in the Circuit Court of Madison county in the name of said Walters & Walker, for the use of said assignee, against the said Thomas L. Whitlock, a resident of said county, to recover a book account of said Walters & Walker thus assigned. The declaration contains the common counts in assumpsit. The evidences of the indebtedness are as follows:

"506.00.             BANK OF SOUTH CAROLINA,  }
              Agency at Greenwood, Oct. 8, 1853. }

"Sixty days after date, pay to the order of J. Bailey, Agent, Five Hundred and Six Dollars, value received, and charge the same to account of

THOMAS L. WHITLOCK.

To Messrs. WALTERS & WALKER, Charleston, S. C."

Mr. T. L. WHITLOCK to WALTERS & WALKER,            Dr.
Oct. 8, 1853—For draft in favor of J. Bailey, Agt.,
             60 days,                      $506 00
             To int. from 10th Dec., 1853, to 25th
               May, '54, 166 d.,              16 10
             2½ coms. on $506,                12 65
                                            _____
                                            $536 75
                                            =======

The defendant filed the general issue and the following plea:

"The defendant Whitlock, for plea saith, that *before* the institution of this suit, William McNaught and James Ormond, partners trading as McNaught & Ormond, instituted an action of assumpsit in Madison Circuit Court against the said Walters & Walker, plaintiffs, and sued out a writ of attachment and writ of garnishment to this defendant, and that said writ of garnishment was duly served upon this de-

fendant on the        day of        , A. D. 1854, and *before* any notice to this defendant of the assignment by said Walters & Walker to said Wm. C. Gatewood, for whose use this suit is instituted.

"And the said defendant further saith, that since the institution of said suit, to wit: on the        day of        , A. D.        , the said McNaught & Ormond, by the judgment of the Circuit Court aforesaid in and for said county aforesaid, recovered in their suit aforesaid against Walters & Walker the sum        dollars, as appears of record in said Court, page        , liber        , of the minutes of said Court, and which said judgment remains in full force and unpaid and exceeds the sum claimed by the plaintiff in this suit; and this the defendant is ready to verify," &c.

To which the plaintiffs replied in substance : "That said Walters & Walker were citizens, merchants and partners, trading in South Carolina and in Florida; that on the 7th day of April, 1854, in Charleston, South Carolina, the said Walters & Walker made and delivered to Wm. C. Gatewood an assignment of *all their* property, real and personal, choses in action, bills, bonds and notes, and all their assets, to said Gatewood, for *the payment of creditors*, which said assignment was valid by the laws of South Carolina, and which said assignment included the debt due from defendant to Walters & Walker."

The rejoinder was the general similiter.

These being the pleadings, the counsel filed an agreement, which reads thus :

" It is agreed between the counsel of plaintiffs and defendant in this case that all matters of evidence shall be put in under the above pleas, and exceptions shall be taken by the counsel as they desire to the rulings of the Court, without reference to the nature of the pleadings, so as to bring before the Court all the points of difference between the counsel on each side and the Court."

The plaintiffs read in evidence the above draft and account, which were admitted by defendant's attorney to be valid demands to the amount of the above stated account ($536.75.) The plaintiffs also read in evidence the above deed of assignment, and here rested.

The defendant then offered Thomas L. Whitlock in evidence, who, being duly sworn, testified that the garnishment and attachment process in the suit of McNaught & Ormond was served on him *before he had notice* of the assignment of Messrs. Walters & Walker to Wm. C. Gatewood, which was admitted, though the papers could not be found, but that he received notice of said assignment a month or two after the service of said writ of garnishment.

It was admitted that McNaught & Ormond had recovered judgment in their said attachment suit.

This being all the testimony, the plaintiffs' counsel moved the Court to instruct the jury "that the assignment of Messrs. Walters & Walker, offered in evidence in this case, is and was operative and valid to pass the debt of defendant to the assignee, William C. Gatewood, from the date of its delivery, and that the title of the assignee was paramount to the lien of the garnishment;" which instruction the Court refused, and to this refusal plaintiffs' counsel excepted, whereupon the Court instructed the jury "that the assignment was not valid to pass to the assignee any chose in action which did not pass a title to the holder by delivery, and that no debt or demand resting in open account passed to the assignee under the assignment *until notice was served on the debtor* by the assignee, and that drafts drawn by a debtor on his factor or commission merchant, and notes of such debtor paid by the factor or commission merchant and entered in a book account, were matters resting in open account, and did not pass to the assignee under the said assignment as against the attaching creditor."

The Court further ruled. "*that the debt of defendant,*

*Thomas L. Whitlock, was subject to be recovered by the said McNaught & Ormond in the suit against said Walters & Walker* and the garnishment issued thereon, and instructed the jury that the defendant was not liable to plaintiff under the rulings of the Court."

The jury found a verdict for defendant, upon which judgment was entered, and from said judgment appeal is taken to this Court.

The errors assigned are—

1st. The Judge erred in refusing to give the instruction asked by plaintiffs' counsel.

2d. The Judge erred in ruling that notice to the debtor was necessary to pass the title of an open account or other chose in action, which did not pass by delivery as against an attaching creditor.

3d. The Judge erred in ruling that the garnishment under attachment process of McNaught & Ormond created a lien paramount to that of the assignment.

4th. The Judge erred in ruling that an attachment intervening the execution and delivery of an assignment valid by the laws of the State where made and notice to the debtor in the case of an open account, has priority over the assignment.

5th. The Judge erred in instructing the jury that drafts drawn on a factor and notes of a debtor paid by such factor and interest on a book account, were an open account, and that the cause of action in this suit was an open account, and did not pass to the assignee under the assignment, and was subject to be recovered by the said McNaught & Ormond on the garnishment against defendant.

6th. The Court erred in instructing the jury that defendant was not liable to plaintiff.

*W. Call* for appellants.

*M. D. Papy* for appellee.

FORWARD, J., after reading the statement prepared by himself, proceeded to deliver the opinion of the Court.

The refusal of the Judge in the Court below to give the instructions asked for by plaintiff's counsel brings us to consider whether the Court erred in so doing, and whether the charge of the Court under the evidence in the case was correct and proper.

As this assignment was executed in Charleston, in the State of South Carolina, it becomes us, *first*, to inquire what was its effect upon the assets of said Walters & Walker in this State, and what force our Courts of law will give it, as regards citizens of our State.

*Secondly.* Whether such assignment transfers the interest of said Walters & Walker to said assignee, notwithstanding a subsequent garnishment, by a creditor of the assignor, and

*Thirdly.* Whether *notice* to the debtor, Whitlock, is necessary to a delivery and transfer of an open account thus assigned.

There is a clear and well defined distinction, supported by the weight of American authority, between *involuntary* transfers of property, such as work by operation of law under foreign bankrupt assignments and insolvent laws, and a *voluntary* conveyance. An assignment by law has no legal operation out of the State in which the act was passed, while a voluntary assignment, it being by the owner, is a personal right of the proprietor to dispose of his effects for honest purposes.

There is no better settled principle of law than that personal property is transferable according to the law of the owner's domicil.

Says Chancellor Kent, in his Commentaries: "The necessary intercourse of mankind requires that the acts of parties valid where made should be recognised in other countries, provided they be not contrary to good morals nor

*repugnant to the policy and positive institutions of the State.*"
2 Kent's Com., 455.

Acting upon this great and social principle, the common
law of England and America have settled that every con-
tract, whether made between foreigners, or between foreign-
ers and citizens, is deemed to be governed by the law of the
place where it is made, and is to be executed. Story on
Conflict of Laws, § 278.

It is by courtesy, comity or mutual convenience of na-
tions, and a yielding to the demands of intercourse in com-
merce, that our Courts sanction the admission and operation
of foreign laws relative to contracts.

This comity, however, does not require our Courts to en-
force a contract according to the laws where it is made, if
such enforcement would be in conflict with our laws, and being
thus in conflict, the enforcement thereof would work against
our own citizens, and give to the foreigner an advantage
which the resident has not.

There is no doubt that each State has jurisdiction over all
property within its limits—has a right by statute to author-
ize creditors to treat an assignment as a nullity, as also to
pass laws subjecting the property of non-residents within its
limits to the payment of debts, and to forbid that any creditor
should be preferred, as also to prescribe the manner of con-
veyance thereof, and to declare what acts shall be deemed
fraudulent, all of which, together with the common law in
force therein, should be considered by the Court in ascer-
taining whether there is any conflict with our laws. Whe-
ther Courts of justice, independently of positive legislation
or local established regulations in regard to the transfer of
personal property, can discriminate in favor of its own citi-
zens, and maintain their consistency in holding that personal
property has no locality, is quite a different question. Story
on Conflict of Laws, § 390.

These being the well established general principles, it fol-

lows that we are to inquire, *first*, whether this deed was a valid instrument in the State where it was executed; *secondly*, whether it is such an assignment as would have been enforced in this State had it been executed here and intended to be used here; and, *thirdly*, whether it gives to foreign creditors an advantage over creditors, citizens of our own State?

It is a voluntary assignment made by a debtor residing in South Carolina for the benefit of his creditors. Was it a valid instrument in that State, and did it take effect immediately on its execution and delivery, and pass a legal estate to the trustee? In ascertaining this, the Courts of that State must be presumed to be the best expositors of their own laws and of the terms of contracts made with reference to them.

Here we will remark that it has not been contended by the learned counsel for the appellee that the assignment is not a valid instrument in both Carolina and Florida, and that under it choses in action, such as notes and liquidated debts, vested in the assignee immediately on its execution, but he contends that title to an open account will not pass to the holder by delivery, and that *notice* to Whitlock (the debtor) was necessary to the perfect transfer of an open account, not only in Carolina but Florida, and so the Court below charged the jury.

The cases of Mitchell vs. Smith, 3 Strobhart's Law Reports, page 244; Dargan vs. Richardson, Cheves' Reps., 197, and Tibbetts vs. Weaver, 5 Strobhart's Law Rep., page 146, conclusively establish the validity of this assignment in the State where it was executed, and that it would be enforced in every particular there, even in a case like the one under consideration.

Dargan vs. Richardson and Mitchell vs. Smith both decide, "That a letter transferring notes, though not received,

11

will fix the rights of the assignee so as to take precedence to the lien of an attachment levied after the date of the letter of assignment, but *before* it was received and accepted by the assignee."

In Tibetts vs. Weaver, the Court say: "The principle upon which a Court of law protects the assignee, when the suit is not in his own name, applies to ALL choses in action equally. The case of Winch vs. Kelly, where it was recognized, was *indebitatus assumpsit* for work and labor, &c. Our late case of Mixon vs. Jones was a demand for mill-right's work, done under special contract."

These cases establish beyond a question that in South Carolina the rule is the same in all choses in action, whether the same be an *open account* or promissory note. So the numerous cases cited by the counsel for appellant declare the rule to be in other States, and so held in the U. S. Circuit Court in Dundas et al. vs. Bouler et al., 3 McLean's Reports, 399.

It appearing clear that this assignment was good and valid in the State of South Carolina, and would be enforced there in all its provisions, we are next to enquire whether there is anything contained in it, or any of its provisions, repugnant to the laws of our State, such as would render it illegal were the deed of assignment executed, and the parties resident in Florida, and intended to be enforced here.

Our Courts fully recognize the right of a debtor, in insolvent circumstances, to make an assignment of all his property, real and personal, including book accounts, choses in action and rights and credits, both at law and in equity, and the right of the assignee to bring suit in the name of the assignor for his use; and in the case of Bellamy vs. Bellamy, adm'r, 6 Florida, page 63, lay down the law to be that "a debtor, in insolvent circumstances, may, before lien attaches, lawfully prefer one creditor or set of creditors to another," and that "a sale, assignment, or other conveyance, is not

necessarily fraudulent because it operates to the prejudice of a particular creditor." The only reservations by the institutions, policy and laws of our State, are to creditors in cases of fraud, where reservation for the use of the assignor is made, and where the same is made with the purpose or intent to hinder, delay or defraud them. It is true, our statute authorizes the issuing of attachment, but we cannot see how a general assignment can be considered a fraud upon the attachment laws or the garnishee process accompanying it. In Halsey et al. vs. Whitney et al., Mason's Reports, 210, Judge Story says: "As to the position that general assignments are a fraud on our attachment laws, for myself, I have never been able to understand precisely what is meant by this language," &c. " Our attachment law is nothing more than a common process, by which any creditor may attach the property of his debtor at the institution of his suit, so as to secure a priority of right to take the same by a levy and satisfaction on the execution which may issue on the judgment in such suit for his own use."—Holmes vs. Remsen, 20 J. R., 260. The assignment operates instanter to divest the interest of the assignor. If this be so, there is nothing left after the assignment is made for an attachment to reach. The beneficial interest, as in this case, is out of the assignor and vested in an assignee in trust. The beneficial interest being in a third person, (the assignee,) is not subject to execution or lien. Were this deed of assignment executed in this State, to be used here, it seems clear it would be valid and our Courts bound to enforce and protect the assignee, unless void wherein it attempts to transfer choses in action, or book account, or other personal property, in consequence of the assignors having retained possession, should this appear to be the fact. We are at a loss to understand how or by what means our Court, in recognizing this assignment, would be enforcing acts of parties contrary to good morals or repugnant to the policy and positive institu-

tions of the State, or, by enforcing the same, work against our own citizens by giving to the foreigner an advantage which the resident has not. Certainly Messrs. McNaught & Ormond, the attaching creditors, would have been in the same position they are now had the assignors been residents of Florida and executed the assignment here, to be used here.

The counsel for the appellee cites and relies mainly upon the following authorities, viz: Fox vs. Adams, 5 Maine Rep., 245; Ingraham vs. Geyer, 13 Mass. Rep., 146; Bryan vs. Brisbin, 26 Missouri Rep., 423.

The assignment in question, before the Court in Missouri, was executed in Minnesota and gave a *preference* to creditors which was repugnant to the laws of Missouri, and the Court very properly say: "Under such an assignment here, the title would pass, *but the provision for preference would be totally disregarded.*" This was the only point decided in that case, and, were there any provisions contained in the assignment we are now considering repugnant to the laws, policy and positive institutions of Florida, this Court would decide in the same way.

So in the case of Ingraham vs. Geyer. The assignment was made in Philadelphia and was repugnant to the decisions of the Courts of Massachusetts. Parker, C. Justice, in delivering the opinion of the Court, commences by declaring: "*This assignment could not be supported, if made within this State by parties residing or living here, and with a view to be here executed.*"

The case of Fox vs. Adams et al. goes further, and the Court in that case place their decision upon the ground that a general assignment made by an insolvent debtor in another jurisdiction shall not be permitted to *operate upon property in that State* so as to defeat the attachment of a creditor residing there. Whether there were any provisions in that assignment contrary to the laws of Massachusetts does not

appear, but it would rather seem that, by operation of the instrument in Pennsylvania, where it was made, the creditor residing in Massachusetts would be deprived of all opportunity of participating with the creditors in the other State. Such being the effect, it is perfectly consistent with the principles required by the comity of nations. Without such an effect appearing, we must most respectfully differ from the rule of comity between States laid down by the Massachusetts Court.

This assignment being a *voluntary* one, by deed, formal and irrevocable, containing no provisions repugnant to our own laws, nor to the policy and positive institutions of this State, and there being nothing to prohibit the assignors, who are citizens of another State, from a free disposal of their personal property situated here, we must, upon the principles of comity between sister States, hold the assignment valid here, and that it operated at its execution to vest the title in the assignee and divested all the interest of the assignors, unless void for want of delivery of the choses in action assigned to the assignee.

This brings us now to consider whether an open account, thus assigned, will pass to the assignee a title by delivery, and whether a delivery of the chose in action or "open account" to the assignee by the assignors was necessary to the protection of the assignee against this attachment, and, if so, whether delivery was made according to law; and, if not, whether the question of delivery or non-delivery was not a question of fact to be determined by the jury, and whether notice to the creditor was essential to the protection of this account from attachment.

We have hereinabove decided, that under voluntary assignments for the benefit of creditors, the rule as to transfer of choses in action is the same in South Carolina and Florida, and the same, whether it be an open account or promissory note, payable to the assignor. It follows, then, that an open

account may be transferred by delivery of possession in cases of clear and manifest assignment.

Courts of common law protect the assignment of choses in action.—Welch vs. Mandeville, 1 Wheaton, 233.

At common law, a bargain and sale of personal property without delivery transfers the legal property in goods, but where the possession remains in the vendor unexplained, it is fraudulent as to creditors.

It may be questionable how far, in the case of an assignment for the benefit of creditors, want of delivery of possession would make it fraudulent.—Mitchell vs. Willock, 2 Watts & Serg., 253; Filter vs. Maitland, 5 Watts & Serg., 307; U. States vs. Hooe, 3 Cranch, 73.

But, assuming that the want of delivery of the chose in action would make the transfer fraudulent, was not this delivery of possession a question of fact under the evidence to be submitted to the jury?

What possession of the assignor, under a deed of assignment for the benefit of creditors, will be consistent with the transfer will depend upon the terms of the instrument and the situation of the property.—Story, Justice, in Meeker vs. Wilson, 1 Gallison, 419.

But, assuming delivery of the "open account" declared on in this case by the assignors to the assignee was necessary to the perfect vesting of title of the same in the assignee, what kind of delivery would he make?—and what would be required of him? It would seem to us, that, in ordinary cases, delivering the evidence of indebtedness would be the most conclusive mode of giving possession. This was so held in the case of the United States vs. The Bank of the United States, Robinson's Reports, page 413. In that case, the Supreme Court of Louisiana say: " *We do not know of a more conclusive mode of giving possession of a debt than by delivering the evidence of it.* In some cases, notice to the debtor is required to be given, but *not always.*

In case of transfer of bills of exchange and notes payable to order, no notice is necessary previous to maturity; nor is it afterwards, except for the purpose of preventing the parties bound from acquiring equities against the holder to which they might be entitled if not notified." Burrill on Assignments, 323.

This we deem the most conclusive mode, but whether possession is given or not is a question of fact, to be determined by the jury. Whether its retention by the assignee is consistent with the deed is for the Court to construe, and whether such delivery be possible under the facts and circumstances of the property may also be a question.

Whether the evidences of the indebtedness of Whitlock to Walters & Walker were or were not in the possession of the assignee at the time Messrs. McNaught & Ormond served their attachment does not appear in the record, nor does it appear that this was a subject of enquiry on the trial.

The Court charged the jury, " *That no debt or demand resting in open account passed to the assignee under the assignment, as against the attaching creditor, until notice was served on the debtor by the assignee.*" And the counsel for the appellee relied on the authorities cited by him to sustain the necessity of notice.

We have searched in vain for any such law in force in this State. It is true the syllabus to the case in Missouri Reports would seem to intimate that *notice* of an assignment to a debtor would prevent attachment, but no such question arose in that case, nor was it so decided. None of the South Carolina cases cited hold that notice for this purpose is necessary.

The case of Beckwith vs. The Union Bank of New York, 5 Seldon, 211, was an assignment of money on deposit in Bank, which must be considered in the nature of an open account. The Court in that case held that the assignee's right to the money was complete, without giving notice of

the assignment to the Bank, and that "*no notice was neces-sary to perfect that right in the assignee, except only that in default of notice, the Bank might have so dealt as by its sub-sequent acts to have affected his rights.*"

It is stated that *notice* is necessary in "*some cases.*" This we apprehend is where it is required to be given by the terms or necessary effect of the assignment itself.

Burrill, in his valuable Treatise on Assignments, page 466, says: "The object of giving notice of the assigment is to give publicity to the transaction, for a two-fold purpose—to apprise the creditors of the transfer and to instruct them as to their proceedings to obtain its benefit, and to *inform* the DEBTORS of the assignor and persons having moneys or property belonging to him in their hands, to whom they are to account and to pay and deliver the same;" and this was what was held in the case of Tibbets vs. Weaver, 5 Strob-hart, 144.

"By the law of some countries," says Story's Conflict of Laws, § 395, "an assignment of a debt is good without any notice to the debtor, and takes effect *instanter;*" and in § 396, that commentator says: "According to our law, an assignment operates *per se* as an equitable transfer of the debt." Again, in § 398, in speaking of the decisions of Lord Kenyon, Lord Hardwicke and Lord Loughborough, he says: "*The question of prior notice or intimation does not seem to have been thought by them material, for they treat the trans-fer as complete from the time of the assignment.*"

This assignment was a trust created for the benefit of creditors, among whom are Messrs. McNaught & Ormond, and a legal estate passed on the execution thereof to the trustee. By its execution the assignors agree that this debt of Whitlock shall be thus applied, and for that purpose transfer all their right and interest. They, the assignors, lost all power over it, and could make no other disposition of it. Why then is a notice to Whitlock necessary for the

passing title in this account? It could not vary it in any way, and only be serviceable for the purposes above mentioned.

Whitlock admits he had notice of the assignment *lis pendens*, the garnishment. Had he desired to protect himself, it was his duty to set up the assignment in answer to the garnishee process. Story on Conflict of Laws, § 396.

The pleadings in this case and the stipulation of the parties necessarily interplead Messrs. McNaught & Ormond, and we have been in consequence thereof compelled to consider this cause as though McNaught & Ormond were parties, and it was a suit between them and the assignee.

We are of the opinion the Court below erred in the instructions given to the jury, therefore the judgment of the Circuit Court must be reversed and set aside, and the cause remanded for a new trial. Let judgment be entered accordingly, with costs.