A. D. JOHNSTON, JR., APPELLANT, VS. R. T. P. ALLEN, AND JULIA A. ALLEN, HIS WIFE, APPELLEES.

1. When a plea on equitable grounds consists of facts which are available to the defendant as a common law defence the court, on motion of plaintiffs, should strike out such equitable plea.

2. The acceptor of a draft—non-negotiable—may pay the same to the payee thereof, after its maturity, even though the draft be not produced and delivered up to the acceptor at the time of payment, provided the acceptor has had no notice of the transfer of the draft by the payee to a third person, and such payment would be a valid defence against the note, should suit be brought thereon against the acceptor by another person.

3. If payment is made by the acceptor to the payee, and the draft be not delivered up at the time of payment, and suit is afterwards brought thereon against the acceptor by another holder claiming to be the transferee thereof, the burden of proof rests upon the plaintiff in the action—the defendant having proved the payment —to show that the defendant had notice of the transfer before the payment was made.

4. The sufficiency of the evidence to prove the facts relied on to constitute notice is a question for the jury.

5. In a suit by a transferee of a non-negotiable draft against the acceptor thereof, evidence of the existence, amount or nature of the indebtedness to such transferee, which was the consideration of such transfer, is immaterial and inadmissible.

6. A charge asked is properly refused which would instruct the jury that as the draft was not negotiable that a payment thereof to the payee by the acceptor after maturity without demanding a delivery up to him of the draft was a valid defence against a holder claiming to own the said draft, who had sued the acceptor thereon, unless such instruction limits the right of the acceptor to pay said draft to the payee prior to his being notified of the transfer thereof by the payee to such holder.

7. Where a party under arrest for embezzlement gives a draft for the amount embezzled to the person from whom it was embezzled, such draft is not invalid unless it was agreed by the parties that in consideration of giving said draft the prosecution should be suppressed.

8. Where a non-negotiable draft, valid in its inception, and on which the payee could have maintained an action against the acceptor, was loaned by the payee to a person under arrest for embezzlement, to enable him to compromise with the party who caused his arrest, and such draft is transferred to such party, who brings suit thereon against the acceptor, such acceptor cannot resist payment of the draft on the ground that it was transferred to the holder in consideration of his agreeing to suppress the prosecution of the person to whom it was loaned by the payee.

9. By our statute, Chap. 3241, February 25th, 1881, a person to whom a non-negotiable draft has been transferred by delivery thereof may maintain a suit thereon against the drawer or acceptor in his own name.

Appeal from the Circuit Court for Orange county.

The plea of payment and the demurrer thereto referred to in the opinion are as follows:

"And for a further plea in this behalf the defendant says that at the time the said draft was presented to him he refused to pay it unless it was indorsed by the payee thereof, J. M. Pearce, but consented to accept payment thereof, and agreeing to pay it whenever the said indorsement was made; that he was not aware of, nor had he any

knowledge that the said plaintiffs owned or claimed to own the said draft at the time of presentation to and acceptance by him; the said draft was presented to him for acceptance by one J. L. Bryan, who was not a clerk or employee of the plaintiffs, and who did not inform him that the said plaintiffs owned or claimed to own the draft; that after the said acceptance thereof, to-wit: on the 8th of January, A. D. 1882, this defendant paid the said John M. Pearce the full amount of the said draft, and received from him a receipt for the same, in words and figures following, that is to say: 'Jan. 8, 1882. Received of A. D. Johnston, Jr., ($217.00) two hundred and seventeen dollars, it being for a certain draft issued by A. D. Johnston, Sr., Aug. 11, 1881.

J. M. PEARCE.'

" Wherefore the said defendant did then and there pay the amount of the said draft which the said plaintiffs now seek to recover from him, and this he seeks to verify."

"And now come the plaintiffs and demur to the defendant's common law plea, and for cause of demurrer assigns, 1st, that a receipt is no sufficient plea to suit on a draft in the hands of a *bona fide* holder."

The other facts of the case are sufficiently stated in the opinion.

*Alex. St.-Clair Abrams* for Appellant.

The defendant filed an equitable plea alleging that the paper upon which the action was based was transferred by Pearce, (the payee,) to Mrs. Allen, (one of the plaintiffs,) to prevent the latter from having one Sharpe arrested and prosecuted for an embezzlement said to have been committed by Sharpe of the funds of said Allen.

This plea was ordered to be stricken out which, I submit, was error.

The consideration *for the transfer* (not of the draft itself) of the draft from Pearce to the plaintiff was in dispute. It is a maxim in equity that "he who comes into equity must come with clean hands." *A fortiori* does this doctrine apply in practice to actions at law. Any consideration arising from or out of the compounding of a felony renders illegal and void any contract based thereon. L. R., 7 Q. B., 554; Commonwealth vs. Pease, 16 Mass., 91; 13 Wend., 593.

The U. S. Supreme Court has held that if B., for value, make a note payable to C., and C., for an alleged consideration, indorse it to D., then D. can sue neither B. nor C. on the note. Nichols vs. Pearson, 7 Pet., (U. S.) 103, 109.

This case at bar is the same as the last except that Pearce transferred the paper to Mrs. Allen merely by delivery instead of indorsing it; indorsement was unnecessary as the paper in this case was non-negotiable. The same doctrine should apply here. I admit that the case cited from 11 Cush., 55, by appellee is against me, but I respectfully submit that the case in 7 Pet., (U. S.) 103, should receive equal consideration in this court, if not greater.

II. The point upon which I most strongly and confidently rely in asking this court to reverse the judgment is this second ground of error. The defendant pleaded payment and wished to prove that the paper sued upon had been paid by him to Pearce, the payee, and a receipt therefor had been given him by the latter. The court sustained a demurrer to this plea. The paper being non-negotiable, no person could by purchase, assignment or in any way obtain greater rights upon it than those possessed by the payee. The plaintiff took the draft with notice of all equities in favor of the defendant. This is elementary and

citation of authorities is needless. Again, the paper, even if negotiable, was dishonored when the plaintiff received it, and this fact also opened the door to all the equities and defences.

The draft was dated August 12, 1881, made payable at sight, and hence matured August 15, 1881, transferred by payee to plaintiff September 1, 1881, as appears by the plaintiff's amended declaration, hence was dishonored at time of transfer. The defendant paid the amount of the draft to Pearce, (the payee) January 8, 1882, and took a receipt. It was not necessary to take up the paper in order to protect himself against any party who held the same having acquired it after maturity, unless notice by the latter to the defendant had been given. Davis vs. Miller, 14 Gratt., 1.

In that case notice *was sent* by holder to payor. The authorities cited by appellee's counsel in their brief (2 Dan. Neg. Inst., §1227, and 20 Lick., 545,) are all cases of negotiable paper, and hence inapplicable here. There can be no *bona fide holder for value* of non-negotiable paper. The appellee seems to disregard the all important point that the draft sued on was non-negotiable, when arguing this point. In the case of non-negotiable paper an assignee or transferee acquires no greater rights than those possessed by his assignor or transferrer. 1 Dan. Neg. Inst., p. 2.

III. J. H. Allen, plaintiffs' witness, was asked by defendant on cross-examination: "State whether or not J. M. Pearce was indebted to Judson Tharpe." Also: "What was Judson Sharpe indebted to plaintiff for?" Also: "State whether or not Judson Sharpe ever owed Julia A. Allen anything, or whether she was put forward subsequently as a plaintiff." These questions were all objected to and ruled out.

I submit they should have been allowed. The essence

of the plaintiffs' case was that the bill was passed from Pearce to Allen upon a sufficient consideration, and therefore the defendant should have been permitted to sift the matter to the bottom, and any evidence tending to throw light on that material point was competent. 1 Whart. Evid., §21, and cases cited.

IV. The defendant asked the court to charge the jury as follows: "That the draft sued on is a non-negotiable instrument and the defendant is entitled to defend against the plaintiffs, (not the payee,) in the same manner and on the same grounds that he could against the payee Pearce. That if the jury believe from the testimony that the defendant has paid the amount of the draft to Pearce they must find for the defendant." The court refused to so charge. This was good law and applicable to the case as the record shows; the instruction should have been granted, and I regard my former citations as in point.

V. The defendant also asked the court to charge the jury that even if Mrs. Allen, (the plaintiff,) received the draft for a valuable consideration, it being non-negotiable, she took it subject to all the equities existing between Pearce and Johnston, (the payee and payor,) and that if by reason of payment or off-set Pearce could not recover by suit against Johnston, neither could Mrs. Allen recover from Johnston, and that hence if the jury believed from the testimony that Johnston had paid the draft to Pearce, Mrs. Allen could not recover and their verdict should be for the defendant.

This instruction was refused erroneously, as I say. The court disregarded the doctrine laid down in Reddish vs. Ritchie, 17 Fla., 867. See also 7 Robertson (N. Y. City Sup. Ct.), 479.

*Hommond & Johnson* for Appellees.

There being sufficient facts disclosed in the record, in our opinion, to justify the finding of the jury, the only questions are:

1st. Did the court err in sustaining the plaintiffs' motion to strike defendant's equitable pleas? We think not. The record discloses the fact that the paper sued on was placed in Allen's hands by Pearce at Sharpe's request to secure a sum of money due by Sharpe to Allen.

This draft was not given to compound a felony and the original consideration of the same was between parties wholly different from those to this suit. In all cases where to an action on a note or bill it is set up as a defence that the paper was given in settlement of a felony such settlement must have been the original consideration to render the paper null. In other words this taint must be *inherent* in the paper, before it can be set up against the paper as a defence. The defendant's equitable plea, although it sets up that the paper sued on was given to compound a felony, makes only, it it makes anything, a case of duress in the procurement of the possession. This defendant, not having been the party under the influence of the duress, cannot plead it as a defence to this action. Robinson vs. Gould, 11 Cush, (Mass.,) p. 55, and authorities therein cited.

2d. Did the court err in sustaining plaintiffs' demurrer to the defendant's common law plea of payment? We think not, for where the acceptor of a draft pays the same, although he takes a receipt from the payee, still, without having the paper delivered up to him as his voucher, he will be liable to a third party who is a *bona fide* holder of the same. 2 Daniel on Neg. Insts., p. 255, §1227; 20 Pickering, (Mass.,) p. 545.

3d. Did the court err in holding that this instrument, although a non-negotiable one, could be transferred by delivery so as to convey title? We think not. Story on

Bills of Exchange, p. 222, §200; 1 Daniel Neg. Insts., p. 686, §741, *et seq.*

4th. Did the court err in holding that the plaintiffs could sue on the instrument in his own name? This right exists in the case of non-negotiable instruments only when conferred by statute. 1 Daniel Neg. Insts., §742, *et seq.*

We insist that such power is conferred by statute in this State. McClellan's Dig., p. 829, §72; Coolebrooke's Collateral Sec., p. 120, §90; Hilton vs. Waring, 7 Wis., 418.

THE CHIEF-JUSTICE delivered the opinion of the court:

The appellees, R. T. P. Allen and Julia A. Allen, brought suit in the Circuit Court of Orange county against the appellant on a draft, of which the following is a copy:

"ORLANDO, Aug. 12, 1881.

"Mr. A. D. Johnston, Jr. At sight, pay to John M. Pearce two hundred and seventeen dollars.

A. D. JOHNSTON, SR."

"Accepted, Sept. 1st, 1881.

A. D. JOHNSTON, JR."

The defendant filed a plea on equitable grounds, setting forth that the plaintiffs did not become possessed of said draft in the due course of trade, or for a valuable or legal consideration; that one Judson Sharpe in the year 1881 was in the employ of plaintiffs on board the steamer Mary Bell, plying on the Kissimmee river, and was charged by plaintiffs with being a defaulter in a large sum of money, and criminal proceedings were instituted or threatened against the said Sharpe, for the alleged embezzlement. Whereupon, the parties agreed to compound and compromise the said felony, and as a part of said compounding the said felony said Pearce deposited with the plaintiffs, among other things, the said draft, as collateral security to

secure the plaintiffs whatever sum might be due to them by the said Judson Sharpe; that said Pearce did not receive any consideration for the same; that said Pearce afterwards informed him that the said draft was deposited as collateral, and forbade his paying the same unless it should be presented properly endorsed by him.

On motion of plaintiffs' counsel this plea was stricken by the court, and appellant assigns such action of the court as error.

There is no reason why this defence should have been set up in a plea on equitable grounds. There is nothing in it that would give a court of equity jurisdiction—if a bill had been filed for relief.

Whatever defence there was in it was available to the defendant by common law plea. This court, in the case of Spratt vs. Price, 18 Fla., 289, decided that when an equitable plea in a common law action consisted of matter which was a defence at law, that the court of its own motion should strike it out.

The appellant also assigns as error the sustaining of plaintiffs' demurrer to his plea of payment. We think this was erroneous.

As the case must be reversed on this point, it is not improper that we should give our views for the guidance of the court in another trial of it. The draft was not a negotiable instrument. By the authorities the acceptor of such a paper had a legal right to pay the amount called for in it to the payee without demanding a delivery up to him of the draft, provided he had no notice that the payee had transferred the draft to a third person before demanding payment. Hart vs. Freeman, 42 Ala., 567; Story on Promissory Notes, sec. 106.

Such a payment would be a valid defence against the note, should it afterwards appear, and suit be brought on it

against the maker by another holder.   The question as to whether Johnston had notice of the transfer by Pearce to plaintiffs of the draft before he claims to have paid it is a question of fact to be decided by a jury.   The burden of proof of this issue rests on the plaintiffs—if the defendant proves the payment—to show that the defendant had notice of the transfer before the payment was made.   The pleadings thould be formed so as to bring the issue of notice *vel non* before the jury.

If Johnston had notice before or at the time of his alleged payment of the draft to Pearce, that Pearce had parted with the possession of it, either by transferring it absolutely, or by giving it to Sharpe to be used by him as collateral, his payment of it with this knowledge would not be a good defense, either as to an absolute transferee from Pearce, or the person who held it as collateral from Sharpe.   The defendant says in his equitable plea that Pearce informed him that the draft was deposited as collateral and forbade his paying it unless it should be presented properly endorsed by him.   If this be true, as to which we say nothing, it was a sufficient notice to him to deprive him of the right to pay the draft to Pearce, and Pearce having given the draft to Sharpe to be used as collateral could not afterwards prevent the payment of it to Sharpe's transferee by forbidding the acceptor to pay it until he should endorse it.   It would permit him, after agreeing to allow Sharpe to use the draft as collateral and delivering it to him for that purpose, and after Sharpe had passed it to another person in pursuance of such authority, to attach a condition to it, at the instance of his own will alone, which would nullify the whole transaction and operate as a fraud on the transferee from Sharpe.

The third assignment of error is that the court refused to permit evidence to go to the jury as to whether Pearce

was indebted to Sharpe, or of the nature of the indebtedness from Sharpe to the plaintiffs, or whether Sharpe was indebted to the plaintiffs at all. We cannot see the materiality of this evidence. It was a matter in which the acceptor was in no wise concerned. His duty and liability were alike limited to the payment of the draft which by his acceptance he agreed to pay to the holder, for what indebtedness it was transferred, its amount, or whether there was any indebtedness existing from the payee, Pearce, to his transferee, Sharpe, or from Sharpe to the plaintiffs, has no bearing or influence on his rights or liability.

Appellant also assigns as error the refusal of the court to give the fourth and fifth instructions asked. These instructions are as follows: " Fourth, that the draft sued on is a non-negotiable instrument, and the defendant is entitled to defend against the plaintiffs, (not the payee,) in the same manner and on the same ground that he could against the payee, Pearce. That if they believe from the testimony that Johnston has paid the amount of the draft to Pearce in payment of the draft, they must find for the defendant." " Fifth, that even though Allen received the draft for a valuable consideration, the draft being a non-negotiable instrument, he took it subject to all the equities existing between Pearce and Johnston. That if, by reason of payment or off-set, Pearce could not recover by suit against Johnston, neither can Allen recover from Johnston. Hence, if the jury believes from the testimony, that Johnston has paid the draft to Pearce, Allen cannot recover, and they must find for the defendant."

Both of these instructions were properly refused. They each asked the court to instruct the jury that they must find for the defendant, if Johnston, the acceptor, had paid the draft to Pearce. They put no limit to the time within which Pearce had a right to demand payment from John

ston, and during which it was the duty of Johnston to pay Pearce.

This was as long as Pearce was the owner of the draft. After that time, and when Pearce had transferred the draft to Sharpe, and Sharpe had transferred it to plaintiffs, if Johnston had notice of such transfer, and paid it to Pearce, it was unauthorized, and was not a payment, so far as the plaintiffs are concerned.

The vital question is, " did Johnston, at the time he paid the draft to Pearce, have notice that Pearce had transferred the draft to another person ?" Yet these instructions ignore this question, and ask the court to charge that, because the paper was non-negotiable, that the acceptor had a right to pay it to the payee, regardless of the question as to whether he knew that the payee had transferred it or not. Supposing that the facts set up in the equitable plea, will be again brought before the Circuit Court in some other form, it is not improper that we should state our views as to their validity as a defense to the action.

The law of contracts relating to the compounding a felony is laid down very clearly. " In all cases of offences. which involve damages to an injured party, for which he may maintain an action, it is competent for him, notwithstanding they are also of a public nature, to compromise or settle his private damage any way he may think fit, but that an agreement for suppressing evidence, or for stifling or compounding a criminal prosecution for a felony, is void." Chitty on Contracts, Vol. 2, p. 991. The mere fact that Sharpe was under arrest for embezzlement from the plaintiffs would not vitiate or taint any agreement he made with the plaintiffs for the payment of whatever sum, he might be indebted to them, unless in consideration of such agreement the plaintiffs were to abandon or suppress the prosecution against him.

But if such an agreement was made by plaintiffs and Sharpe, we cannot see how it is an available defence to the defendant. There is no contest as to the validity and binding force on him of the draft in its inception. He was not privy to the agreement between plaintiffs and Sharpe. His interests are not affected by it in any way. Mack vs. Clark, 1 Met., 423.

Judgment reversed and new trial granted.