### JONES v. COATES.

( (Circuit Court of Appeals, Eighth Circuit.   April 29, 1912.)

#### No. 3,613.

**1. PLEDGES (§ 13*)—VERBAL PLEDGE—VALIDITY.**

A verbal pledge of insurance policies or other choses in action, accompanied by their delivery to the pledgee with the intention of passing the equitable right to them, is efficacious for that purpose, even though the legal title remains in the pledgor, and the pledge is good and enforceable as between the parties or against the trustee in bankruptcy of the pledgor, in the absence of any statute requiring it to be in writing or recorded.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 21; Dec. Dig. § 13.*]

**2. BANKRUPTCY (§ 161*)—TIME FOR FILING INVOLUNTARY PETITION—ACTS OF BANKRUPTCY—PREFERENTIAL TRANSFER.**

Under the provision of Bankr. Act July 1, 1898, c. 541, § 3, subd. "b," 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), that where the act of bankruptcy alleged consists of a transfer of property with intent to defraud or to give a preference, if the transfer is not required by the laws of the state to be recorded, the time for filing the petition shall not expire until four months "from the date when the beneficiary takes notorious exclusive or continuous possession of the property," unless the petitioning creditors had actual notice, only that kind of notorious exclusive or continuous possession is contemplated which the nature of the property will permit, and such as is usual and ordinary, unaccompanied by acts or conduct tending to conceal its ownership; and, in the case of intangible property, such as notes or insurance policies, notice of the transfer to creditors of the assignor is not necessary to prevent the running of the four months period.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. § 161.*]

**3. BANKRUPTCY (§ 91*)—HEARING ON INVOLUNTARY PETITION—EVIDENCE.**

Where the act of bankruptcy charged in an involuntary petition was an alleged preferential transfer of insurance policies after a loss of the insured property, and on the hearing petitioners introduced in evidence a written assignment of the policies, made within four months, but which recited that it was made "to evidence previous assignment and verbal understanding," it was error to exclude evidence offered by defendant to show that the policies, together with proofs of loss and all papers and records relating thereto, had in fact been delivered to the assignee several months before as collateral security for money then advanced, and to be advanced by him, and under a verbal agreement that he should prosecute suits thereon and apply the proceeds in payment of such advances and certain debts of the insured, including one to himself.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 137–139; Dec. Dig. § 91.*]

Hook, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of Missouri.

In the matter of William H. Jones, alleged bankrupt. From an order of adjudication, on petition of W. W. Coates, after a jury trial, defendant brings error.   Reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Wilbur S. Jenks and Ernest S. Ellis (Frank W. Yale, on the brief), for plaintiff in error.

John I. Williamson (J. C. Petherbridge, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. On November 30, 1909, Coates, the defendant in error, filed a petition in bankruptcy against Jones, the plaintiff in error, in which he averred that he was a creditor of Jones, who had less than twelve creditors in all, and that within four months before that date Jones had committed an act of bankruptcy in this:

"That he did, while insolvent, assign and transfer to one W. S. Fallis, one of his creditors, certain claims and judgments due the said William H. Jones upon insurance policies and against certain insurance companies, with an intent to prefer said W. S. Fallis over his other creditors; that the claims due said Jones upon the insurance policies so assigned by him amount to about the sum of twenty thousand dollars ($20,000) which constituted nearly all of the assets of the said William H. Jones."

No further additional or different act of bankruptcy was charged. Upon issue duly joined the cause was tried to a jury who found for the petitioning creditors and adjudication in bankruptcy followed. This writ of error challenges that adjudication.

The transactions out of which the present controversy came had their beginning in 1908, when Jones purchased three separate stocks of merchandise located in different towns of Kansas and agreed as a part consideration therefor to pay Coates' mercantile indebtedness. With the assistance of the house of Smith-McCord-Townsend Dry Goods Company, those debts were all paid and the latter house opened an account with and sold to Jones a bill of goods amounting to some $7,000. Jones afterwards became indebted to the First National Bank of Ottawa for money borrowed, in the sum of about $5,000, and to W. S. Fallis in the sum of about $4,883, and to some other creditors in small amounts. In the meantime Jones, who had assembled his three separate stocks of goods at Ottawa where he carried on business for a while, sustained a loss of his entire stock by fire. This was in November, 1908. Ten insurance companies had insured his goods in the aggregate sum of $19,500. One company settled soon after the fire and paid $2,000, the amount of its liability. The others declined to pay and suits were instituted by Jones on their several contracts of insurance. While these suits were pending or after they had gone to judgment in Jones' favor, he on October 25, 1909, executed and delivered to one W. S. Fallis a paper writing in words and figures as follows:

"For value received I hereby sell and assign to W. S. Fallis the judgments rendered in my favor and against the following named insurance companies in the district court of Franklin county, Kansas, namely: The Westchester Fire Insurance Company, the Prussian National Insurance Company, the Concordia Fire Insurance Company, the Fireman's Fund Insurance Company, the Williamsburg City Insurance Company, the Mercantile Fire & Marine Insurance Company. And I also sell and assign to said W. S. Fallis all my right, title and interest in and to the policies of insurance and my causes of action against the following insurance companies—the Home In-

surance Company of New York, the Germania Fire Insurance Company, the Queen Insurance Company of America, the Michigan Commercial Insurance Company. These assignments are made to evidence previous assignment and verbal understanding and in consideration of moneys loaned by said W. S. Fallis and liabilities incurred by him on my behalf, and in consideration that said Fallis shall use all due means to collect such judgments and prosecute the said causes of action against the above named insurance companies and out of the proceeds pay the certain indebtedness of this assignor to the First National Bank of Ottawa, Kansas, amounting to $5030.00 approximately, and interest; also my certain indebtedness to the Smith-McCord-Townsend Dry Goods Company, including indebtedness to their representative John S. Campbell, amounting to approximately $7000.00 and interest. Signed this 25 day of October, 1909.                    W. H. Jones."

This document constituted the main evidence on which the petitioning creditor relied to establish the alleged act of bankruptcy.

The debtor's contention was that the actual transfer evidenced by that writing was made in May, 1909, more than four months before the petition was filed, and therefore did not constitute an act of bankruptcy within the meaning of section 3, subs. 2 and 5b, of the Bankruptcy Act.

After the reception of the writing in evidence, the debtor's counsel by way of cross-examination interrogated Jones, who had been called as a witness by the petitioning creditor, with a view of showing that the actual transaction, detailed in the writing, occurred in May or June, 1909, and that the writing itself was given only to evidence a prior verbal pledge or transfer of the property therein mentioned.

After objection had been made to this line of inquiry and after the court had repeatedly expressed his opinion that the written instrument controlled, counsel for the bankrupt made an oral offer of proof which was excluded by the court and exception duly preserved. Later by permission of the court this offer was put in writing and certified by the court to be the offer which had been so excluded. It was as follows:

"The respondent, William H. Jones, now offers to prove by the witness on the stand and by other competent testimony: That on, to wit, the ——— day of May, 1909, and more than four months prior to the filing of the petition herein he, William H. Jones, then residing at Ottawa, Kan., did then and there at Ottawa, Kan., in consideration of moneys then advanced to him as a loan by W. S. Fallis, also residing at Ottawa, Kan., and then and there being did then and there orally assign, pledge, and deliver to said W. S. Fallis, as collateral security for the money then so loaned by him and other moneys to be advanced, all of the policies of insurance mentioned and referred to in the petition filed herein and mentioned and described by the witness now on the stand, together with the judgment which had theretofore been rendered in his favor by the district court of Franklin county, Kan., against the American Central Insurance Company upon the policy issued in his favor by said company; and did then and there pledge and deliver to said Fallis all his books, papers, records, proofs of loss, correspondence, and documents relating to said causes of action against said insurance companies, and said policies, books, papers, records, etc., have from that date been and still are in the possession and under the control of said Fallis. That in said contract of pledge it was agreed that said Fallis should collect the money due from said insurance companies respectively upon said policies, and causes of action either in his name or in the name of said Jones, as he might elect, and from the proceeds should first pay the certain indebtedness of William H. Jones to the First National Bank of Ottawa,

Kan., and the certain indebtedness of William H. Jones to Smith-McCord-Townsend Dry Goods Company pro rata as collected, and then apply the balance collected upon the indebtedness of William H. Jones to said Fallis. And respondent further offers to show by the witness on the stand and other competent testimony that this contract of pledge above mentioned is the assignment and verbal understanding referred to in the written document or instrument introduced in evidence, bearing date October 25, 1909, and that instrument dated October 25, 1909, was not intended to convey any further or different interest or right either legal or equitable from Jones to Fallis than had already been conveyed and passed to said Fallis, under and by virtue of the pledge aforesaid, and in connection with the offers above mentioned."

There are some minor questions raised by the assignment of errors, but the vital and decisive question is whether the court erred in excluding the evidence offered by Jones to show the verbal pledge.

[1] That, independent of the Bankruptcy Act or other statutes, there can be a verbal pledge of insurance policies or other chose in action is conceded. The manual delivery of them to a pledgee with full power of control over them and with the intention of passing the equitable right to them is efficacious to that end even if the legal title remains in the pledgor. Williams v. Norton, 3 Kan. 295; McCrum v. Corby, 11 Kan. 464; Washington v. Hobart, 17 Kan. 275; Citizens' National Bank v. Bank of Commerce, 80 Kan. 205, 101 Pac. 1005; Boynton v. Payrow, 67 Me. 587; Taft v. Bowker, 132 Mass. 277. It would constitute an equitable and enforceable pledge good between the parties and hence good as against the trustee in bankruptcy of one of them. Hurley, Trustee, v. Atchison, Topeka & Santa Fé Ry., 213 U. S. 126, 29 Sup. Ct. 466, 53 L. Ed. 729.

Registration laws in some states require pledges of this kind to be recorded, and invalidate them if not recorded; but there was no such law in the state of Kansas where the transaction in question occurred. As between Jones and Fallis, therefore, the verbal pledge, if made, was valid and enforceable, although no notice of it was given by any public record.

The statement in the writing of October 25th that "these assignments are made to evidence previous assignment and verbal understanding," etc., called attention to the fact that some other transaction had been had between the parties in relation to the subject-matter of the written document, to which the writing was related, and opened the door to the introduction of evidence showing what the "previous assignment and verbal understanding" was, without contradicting, varying or changing the provisions of the written document itself. Citizens' Bank of Emporia, Kansas, v. Brigham, 61 Kan. 727, 60 Pac. 754. Accordingly, the offer to prove by Jones and other witnesses what that previous assignment and verbal understanding was and that it concerned the very property described in the written paper was not obnoxious to the objection that it contradicted, varied, or changed the writing, and should have been permitted as evidence tending to show the real intention of the parties. In re Ratliffe (C. C.) 177 Fed. 587.

[2] But it is contended that section 3, subd. "b" of the Bankruptcy Act, contains provisions which invalidated the pledge when brought

in question in proceedings instituted under that act. That subdivision reads as follows:

"A petition may be filed against a person who is insolvent and who has committed an act of bankruptcy within four months after the commission of such act. Such time shall not expire until four months after the date of the recording or registering of the transfer or assignment when the act consists in having made a transfer of any of his property with intent to hinder, delay, or defraud his creditors or for the purpose of giving a preference as hereinbefore provided, or a general assignment for the benefit of his creditors, if by law such recording or registering is required or permitted, or, if it is not, from the date when the beneficiary takes notorious, exclusive, or continuous possession of the property unless the petitioning creditors have received actual notice of such transfer or assignment."

The contention of Coates is that even if there was a prior verbal pledge which antedated more than four months the filing of the petition in bankruptcy, and which was otherwise good as between the parties, the offer to prove that fact, unaccompanied by an offer to prove a notorious, exclusive or continuous possession in the transferee of the property pledged, was insufficient to carry the act of bankruptcy back beyond the date of the written document in question.

It is doubtful if section 3, sub. 5b, of the Bankruptcy Act, has any application to the kind of property claimed to have been transferred by Jones. It consisted of choses in action only—incorporeal and intangible rights resting in contract. How can any one take notorious, exclusive, or continuous possession of rights like these? See Young v. Upson (C. C.) 115 Fed. 192, 195; In re Bogen (D. C.) 134 Fed. 1019; McGee v. Riddlesbarger, 39 Mo. 365; Schawacker v. Ludington, 77 Mo. App. 415; Frankfort Chair Co. v. Buchanan, 21 Ky. Law Rep. 269, 51 S. W. 179; Niles v. Mathusa, 162 N. Y. 546, 57 N. E. 184, 185; National Hudson River Bank v. Chaskin, 28 App. Div. 311, 51 N. Y. Supp. 64.

But we need not invoke any doubtful proposition of law in this case. It is common learning and common sense that the notorious, exclusive, or continuous possession contemplated by the Bankruptcy Act in question is only that kind of notoriousness, exclusiveness, and continuousness which the nature of the property will permit or of which it is susceptible. Brandenburg on Bankruptcy (3d Ed.) § 85; Collier on Bankruptcy (6th Ed.) 56; In re Bogen, supra. Collier in the citation referred to says:

"The word 'possession' means such possession as the property is susceptible of, and of such as is usual and ordinary; if the property transferred consists of promissory notes, possession will be deemed notorious although the creditors are not expressly notified of the transfer."

Judge Thompson, speaking for the court in Re Bogen, supra, says:

"Assuming that the words 'takes notorious, exclusive or continuous possession' apply to the intangible forms of personal property, they must be construed to mean such possession as the property is susceptible of, and such as is usual and ordinary, unaccompanied by acts or conduct tending to conceal its ownership. In re Woodward, 2 Am. Bankr. R. 233. Any construction which would place such property [three promissory notes] on a plane with tangible property would lead to mischievous and serious interference with business and commercial transactions, which it cannot be assumed was contemplated by Congress."

[3] If evidence was offered tending to show that Fallis, the transferee, took as notorious, exclusive, and continuous possession of the property claimed to have been pledged to him in May or June as its nature and character permitted, it should have been received and left to the jury under proper instructions to determine its value and sufficiency. A brief analysis of the offer of proof discloses these facts: That Jones offered to prove not only the fact that a verbal pledge of the policies (one of which only had then been reduced to judgment) had been made to Fallis in May, 1909, more than four months prior to the filing of the petition in bankruptcy, but that at that time all the policies and all the books, papers, records, proofs of loss, correspondence and documents relating to the claims under the policies had been delivered to Fallis, and that from and after that date they had remained in the possession and under the control of Fallis pursuant to an agreement that Fallis should reduce the claims under the policies to money and out of the proceeds pay certain debts of Jones, including one to Fallis himself. We think that proof of the kind so offered to be made constituted very substantial if not entirely satisfactory evidence of as notorious, exclusive, or continuous possession of the policies by Fallis as their nature and character permitted; and that the court erred in not permitting Jones to make the proof offered.

There is another reason also why the offer as made should not have been rejected. In it Jones offered to prove that the policies were so assigned, pledged, and delivered to Fallis in consideration of moneys then advanced to him as a loan by Fallis and as collateral security for the money so loaned and other moneys to be advanced by Fallis to him. In other words, that there was a transfer of the property in good faith and for a present fair consideration which was permitted and protected by the provisions of section 67e of the Bankruptcy Act. The argument of counsel for defendant in error is that the proof already made in the case disclosed that no money was actually paid, loaned, or advanced to Jones by Fallis at the time of the alleged oral pledge. This may be so, but non constat Jones might successfully contradict the testimony already given and make persuasive proof to the contrary. At any rate, he offered to do so, and the court should have permitted him to make the attempt.

A colloquy between the court and counsel at the trial disclosed that Jones did not intend to offer proof showing that Coates, the petitioning creditor, actually knew of the oral pledge within four months of the time the petition in bankruptcy was filed, and, in view of this fact, some argument is made that Coates' rights are unaffected by the pledge if made. Conceding, without admitting, that the burden of proof would be on Jones to make the showing referred to, Coates' want of knowledge is quite unimportant. Bankr. Act, sec. 3, sub. 5b, in its last clause gives force and effect to constructive knowledge, even if the petitioning creditor had no actual knowledge of the prohibited transfer. It provides that the petitioning creditor must file his petition within four months after the beneficiary takes notorious, exclusive, or continuous possession of the property transferred unless he had received actual knowledge of it before then, thereby clearly im-

plying that, if he had received such actual knowledge, he must proceed and file his petition within four months thereafter, whatever might have been the character of the possession taken by the beneficiary.

On the hypothesis that the proof offered to be made in this case would show the requisite notoriety of the transferee's possession of the choses in action in question, it became the duty of the petitioning creditor to file his petition within four months thereafter, at the latest.

Some argument was made at the bar that, even if the pledge of the policies was made in May or June as claimed, the transaction would have constituted an assignment for the benefit of all the creditors within the meaning of section 342 of the General Statutes of Kansas (1901) as interpreted in Hardware Co. v. Implement Co., 47 Kan. 423, 28 Pac. 171, and would have been void because not acknowledged, or recorded as required by law. The suggestion is that, if 'Jones had been permitted to prove all he offered to prove, he would have established nothing but a void general assignment. A sufficient answer to this suggestion is that, even if that be true, it was nevertheless an actual transfer of property, which, if unassailed, would have been good as between the parties to the transaction. If the proof which was offered to be made could have been made, and had been made, it would have demonstrated that the actual transfer as between the parties themselves, occurred more than four months before the filing of the petition, and that no such transfer was made within that time; and this would have defeated the adjudication of bankruptcy on the only charge made against the debtor—a transfer with intent to prefer one creditor over others—whether there had been a prior abortive voluntary assignment or a prior transfer of property from the debtor to a creditor or not.

The argument referred to is in our opinion without pertinency to the case before us. As the case must be remanded for another trial, some minor questions argued before us may not again arise, and we refrain from considering them at the present time.

Because the learned trial judge refused to permit the debtor to make proof of the facts offered to be proved by him the judgment must be reversed and the cause remanded for a new trial, and it is so ordered.

HOOK, Circuit Judge, dissents.