M. M. LANDY, Inc., Appellant,

v.

John NICHOLAS, as Receiver of Continental Charterers, Inc., Bankrupt, Appellee.

No. 15159.

United States Court of Appeals Fifth Circuit.

April 26, 1955.

Don G. Nicholson, Henry M. Sinclair (of Choate & Sinclair, Miami, Fla., for appellant.

Harold Friedman, Feibelman & Friedman, Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, TUTTLE, Circuit Judge, and DAWKINS, District Judge.

TUTTLE, Circuit Judge.

This case involves the application of the preference provisions of § 60, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a, to loans made on the security of assigned choses in action against the United States. The assignments were neither recorded as assignments of accounts receivable nor made in compliance with the Federal Assignment of Claims statute, 31 U.S.C.A. § 203, but United States Government warrants evidencing or representing the assignor's rights to payment of the choses in action are by virtue of the assignment agreement in the possession of the assignee.

Because neither a copy of the assignment agreement nor a copy of the warrants was introduced into evidence, and because the stipulation of facts upon which the case was submitted to the Referee does not include several essentials to a final determination of the rights of the parties, it has been somewhat difficult to accommodate or fit the rationale of the trial court and the argument of counsel to the ultimate facts which we find necessary to decide this case. One factor which we believe goes to the very core of the controversy, but the importance of which does not seem to have been recognized clearly either in the judgment or in the argument of counsel, is that two different stages were involved in the security arrangement that gave rise to this dispute. The first stage was the assignment of certain accounts receivable to M. M. Landy, Inc., and the second was the transfer of the warrants, as contemplated in the agreement. It is the right to the warrants, or the right to money which they evidence or represent, that is in issue here.

This proceeding was commenced by a petition filed in the pending bankruptcy case, in effect alleging that M. M. Landy, Inc. (hereinafter "Landy") was in possession of certain United States Government warrants issued to the bankrupt; that under Federal laws the said warrants were not assignable and that, therefore, the warrants were the property of the bankrupt and should be turned over to the receiver. To this petition, and in response to an order to show cause, appellant admitted possession but alleged the warrants were the property of Landy, having been purchased for good and valuable consideration. The issue was tried by the Referee upon the following stipulation of the facts which the parties and Referee deemed sufficient:

"1. The bankrupt entered into an agreement with M. M. Landy, Inc. to assign certain receivables then due and to become due in the future to M. M. Landy, Inc. as security for certain cash advances made by M. M. Landy, Inc. to said bankrupt.

"2. In accordance with said agreement, said bankrupt was advanced certain monies by M. M. Landy, Inc. and assigned as security the accounts receivable then due and owing by the United States Government to Continental Charters [sic], Inc.

"3. In accordance with Section 524 of the Florida Statutes, and [sic] assignment was filed with the Secretary of State naming M. M. Landy and H. J. Mahler as assignees and Continental Charters, Inc. as assignor on February 11, 1952.

"4. That there is no record of a notice of assignment being filed with the office of the Secretary of State reflecting M. M. Landy, Inc. as assignee and Continental Charters,

Inc. as assignor, and there was no renewal of the notice of assignment in accordance with Section 524 of the Florida Statutes of the original assignment between M. M. Landy and H. J. Mahler as assignees and Continental Charters, Inc. as assignor.

"5. That M. M. Landy, Inc. is now holding United States Government warrants amounting to the sum of $8,615.45 in which Continental Charters, Inc. is reflected as the payee.

"6. That the United States Government has not been notified of the assignment of Continental Charters, Inc. to M. M. Landy, Inc., of any accounts receivable and that M. M. Landy, Inc. has not availed itself of the provisions of the United States Code Annotated as reflected in Title 31, Section 203.

"7. M. M. Landy has a valid assignment of accounts receivable of Continental Charters, Inc. and they have exercised continuous dominion over prior accounts receivable assigned to them by Continental Charters, Inc. by virtue of said agreement." [1]

The Referee's findings state, and we accept as fairly inferred from the stipulation, "that present consideration was given to the bankrupt at the time of the assignment of the accounts receivable, of which said Government warrants represent payments." [2] No copy of the warrants was introduced into the record or attached as an exhibit, but from the stipulation and from the statements in the appellee's brief that "certain monies were due the bankrupt on an open account receivable, and warrants were issued by the U. S. Government to pay said account," and "we agree that the warrants are non-negotiable," we conclude that the

---

1. We interpret paragraph 7 as stipulating only that there is no question about the validity of the assignment under the rule in Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991. See Second Nat. Bank v. Phillips, 5 Cir., 189 F.2d 115.

2. The record is not clear whether the delivery of the warrants to M. M. Landy, Inc., occurred within the four months preceding bankruptcy, nor whether the debtor was then insolvent, nor whether present consideration was given by M. M. Landy, Inc., for the warrants.

parties agreed that the warrants are non-negotiable orders on the Treasury to pay certain sums to the bankrupt, due on the assigned claims. There was no stipulation and no finding that Landy, or any of its agents had, at the time the transfer was made, reasonable cause to believe that Continental was insolvent, which is a fact essential to avoiding a preference, under 11 U.S.C.A. § 96, sub. b.

On the basis of these facts the Referee concluded that Landy's security interest was never perfected under § 60, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a, and that there was a voidable preference under that section; accordingly, he ordered Landy to turn over the warrants to the Receiver. The district court affirmed the Referee's order.

We are obliged to reverse the order on the ground that no finding was made that the transferee had reasonable ground to believe that Continental was insolvent either at the time of delivery to it of the warrants or even immediately before bankruptcy, nor was any evidence introduced to prove this fact essential to the Receiver's case. 11 U.S.C.A. § 96, sub. b; 3 Collier, Bankruptcy (14th Ed.) ¶60.52. We think the Referee and trial court erred in another respect, in finding that Landy's security interest was never perfected. The proper decision of that matter turns upon the construction of two statutes, the Federal Assignment of Claims statute, 31 U.S.C.A. § 203, and the Florida Assignment of Accounts Receivable Act, Fla.Stats.Ann. §§ 524.01–524.09; and upon the question whether under Florida law Landy had a perfected pledge.

■ I.   Effect of 31 U.S.C.A. § 203.—Although the Receiver's original petition was based solely on this point, appellant's brief discusses this statute [3] in a very

---

3. The statute provides in pertinent part, 31 U.S.C.A. § 203:

"Assignments of claims; set-off against assignee

"All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, except as hereinafter provided, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer, having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same. * * *.

"The provisions of the preceding paragraph shall not apply in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution, including any Federal lending agency: Provided,

"1. That in the case of any contract entered into prior to October 9, 1940, no claim shall be assigned without the consent of the head of the department or agency concerned;

"2. That in the case of any contract entered into after October 9, 1940, no claim shall be assigned if it arises under a contract which forbids such assignment;

"3. That unless otherwise expressly permitted by such contract any such assignment shall cover all amounts payable under such contract and not already paid, shall not be made to more than one party, and shall not be subject to further assignment, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing;

"4. That in the event of any such assignment, the assignee thereof shall file written notice of the assignment together with a true copy of the instrument of assignment with (a) the contracting officer of the head of his department or agency; (b) the surety or sureties upon the bond or bonds, if any, in connection with such contract; and (c) the disbursing of-

cursory manner, and it is not even cited in the Receiver's brief. There is some conflict in the authorities as to the effect of this statute as between the parties to a non-conforming assignment. The cases of National Bank of Commerce of Seattle v. Downie, 218 U.S. 345, 31 S.Ct. 89, 54 L.Ed. 1065, and Spoffard v. Kirk, 97 U.S. 484, 24 L.Ed. 1032, which said that such an assignment was of no effect and unenforceable even between the parties thereto, have never been expressly overruled, although Martin v. National Surety Company, 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822, distinguishing Downie on the ground that there, payment had not been made by the Government at the time the assignee sought to enforce the assignment, reached a result quite inconsistent with the *ratio decidendi* in Downie. See In re Italian Cook Oil Corp., 3 Cir., 190 F.2d 994; In re Webber Motor Co., D.C.D.N.J., 52 F.Supp. 742; Note, "The Assignment of Government Contracts as Collateral," 101 U.Pa.L.Rev. 106, 107–108. We need not go so far here as to say that an assignment of an unliquidated claim would be enforceable between the parties, however, because here warrants had been issued prior to bankruptcy, cf. In re Meadow Sweet Farms, Inc., D.C.,W.D.N.Y., 32 F.Supp. 119; but the facts of this case do go beyond those

of the Martin case—where *payment* had been made by the Government *ante litem motam*—and we therefore decide that an assignment of a claim against the Government not conforming to the statute, but after the issuance of warrants, is valid as against a bankruptcy receiver if it is perfected according to local law and otherwise meeting the tests of § 60, sub. a of the Bankruptcy Act. See also Annotation, 12 A.L.R.2d 460, 468. Of course, our decision does not deprive the Government of its defense in any action against it, or to any rights to setoff it may have against either assignor or assignee.

We conclude, then, that failure to comply with the Federal Assignment of Claims statute is immaterial in the decision of this case. By stipulation, Landy's security interest is not protected by the methods provided by this statute. Nevertheless, we recognize that there may be alternative ways of perfecting a security interest in a claim against the Government, under State law, which are valid as against a trustee or receiver in bankruptcy.

II. Effect of Florida Statutes §§ 524.01–524.09.—The words of the Florida statute which we deem crucial in the instant case are those printed in italics in the margin.[4] Those words assume

ficer, if any, designated in such contract to make payment.

"Notwithstanding any law to the contrary governing the validity of assignments, any assignment pursuant to this section, shall constitute a valid assignment for all purposes. * * * "

4. The statute provides for filing and periodic renewal of notice of assignment of, or of intention to assign, accounts receivable, such notice giving an assignee priority over subsequent lienors and assignees of the assignor. An assignment thus protected is subject to antecedent judicial liens and earlier filed assignments, except where the earlier filing assignee had written notice of the prior unfiled assignment, at the time of taking his subsequent assignment. The pivotal language of the statute for the present case is in § 524.01(1):

"'Account' or 'account receivable' means an existing or future right to the payment of money: (a) Under an exist-

ing contract, (b) The assignment of which right is not subject to special statutory provisions of the state or federal government relative to the rights of creditors of the assignor or of successive assignees from the assignor, (c) Which right to payment is not secured by a chattel mortgage, a conditional sale, or other instrument and which instrument was given at or before the time the account was assigned and reserves the title to, or creates a lien upon, goods the sale of which gave rise to the account, and (d) Which right to payment is not represented by: 1. A judgment, 2. A negotiable instrument, or 3. *A non-negotiable instrument which so represents the obligation that an assignee who takes possession of it, takes rights superior to those of a prior assignee of the obligation who did not take possession of the instrument.*" (Emphasis added.)

928

the existence under Florida law of the type of non-negotiable instruments which embody or "reify," so to speak, obliga-. tions. We have not found any Florida cases defining this class of non-negotiable instrument; indeed, we have not found a single instance where the pledge of a non-negotiable instrument was held in Florida to have the effect of cutting off a prior hypothecation of the obligation to which it related. But a dictum in Walters & Walker v. Whitlock, 9 Fla. 86, 102, suggests that Florida might recognize this kind of non-negotiable instrument:

"It would seem to us, that, in ordinary cases, delivering the evidence of indebtedness would be the most conclusive mode of giving possession. This was so held in the case of United States v. The [President, Director, and Company of the] Bank of the United States, [8] Robinson's Reports, [262] page 413. In that case, the Supreme Court of Louisiana says: *'We do not know of a more conclusive mode of giving possession of a debt than by delivering the evidence of it.'*"

We may mention also in passing that the appellant argues in his reply brief that the statute "is designed to cover accounts receivable for goods sold, not for services performed, and its terms preclude its application to the transfers here involved." This argument is so patently contrary to the language of the statute, however, that we cannot seriously consider it.

Likewise, the appellant's contention that the Florida statute was not intended to protect creditors from secret, unrecorded assignments of accounts receivable, citing Wells v. Place, D.C.N.D.Ohio, 92 F.Supp. 473, is rationally untenable in the light of the words of § 524.04(2):

"A protected assignee takes subject to: (a) Judicial liens on the account at the time his assignment became protected; (b) An assignment to another person which was protected before his assignment, except that an assignee takes priority over another assignee who files later than he did, regardless of the relative dates of their assignments."

We may judicially note that this statute, like those in 35 other states, was adopted as a direct result of the Chandler Act amendment to § 60, sub. a of the

Therefore, we conclude that although there are no Florida cases of which we are aware holding that any non-negotiable instrument can "so represent the obligation that an assignee who takes possession of it, takes rights superior to those of a prior assignee of the obligation who did not take possession of the instrument," there must certainly be such instruments. And we think that the statutory language indicates clearly that the Florida legislature intended to except from "accounts receivable" that class of non-negotiable instruments the delivery of which effects a valid pledge of the obligations represented by or embodied in those instruments. In other words, to take the present example, if the delivery of the warrants here was a pledge of the claim against the Government, Landy's failure to record did not prevent his security interest from being a perfected one under the terms of the Florida statute. We shall therefore proceed to inquire as to the scope of the class of non-negotiable instruments which embody obligations, for the purposes of the law of pledges.

Bankruptcy Act, 11 U.S.C.A. § 96, sub. a, and its application in Corn Exchange Nat. Bank & Trust v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, 144 A.L.R. 1189. We incline to the view that the draftsmen of the Florida statute and the legislature were aware of the provision of the Bankruptcy Act then giving the trustee in bankruptcy the rights of any bona fide purchaser from or any creditor of the bankrupt. The effect of the language used by the legislature is to give the trustee in bankruptcy a better right than an unrecorded assignee of accounts receivable (as the statute defines them); and whether that was a primary motive of the legislature or not, such was clearly the Congressional intent in § 60, sub. a. Wells v. Place, supra, is not in point, because the Ohio statute involved there, Ohio Gen.Code § 8509-3, since amended, referred only to subsequent assignees and made no mention of creditors' rights, as the Florida statute does. The Florida statute is clear that an assignee's failure to record would enable an actual creditor of the assignor to establish superior rights by garnishing the account, and that is the critical test adopted in the Bankruptcy Act.

III. Effectiveness of the Transaction as a Pledge.—Certain kinds of instruments represent obligations sufficiently that a delivery of them pledges the obligations. This was true of the common law specialty or sealed instrument; it is true of the commercial specialty or negotiable instrument. The idea of negotiability has now been extended to documents of title such as warehouse receipts and order bills of lading, and at the same time the idea of embodiment of a right to money has been and is being extended to certain non-negotiable choses. Stock certificates,[5] insurance policies,[6] and savings bank books[7] may be the subject of pledges by delivery alone. Of course, not all written instruments embody the obligation; the delivery of an ordinary written contract, even if it is a memorandum necessary under the Statute of Frauds, is not a pledge of the obligation.[8]

Williston proposed a rational distinction between the non-negotiable instruments which embody obligations and those which do not:[9]

"Certain contractual rights are embodied in instruments that are more than mere evidence of a claim and are popularly referred to and regarded as if they were themselves the obligations. To some extent the law has sanctioned this popular view, and there is a sound basis for it where by contract or custom, enforcement of a right is conditional on the surrender of the document evidencing the right. * * * The delivery of the document with donative intent transfers a right * *. This is true of the gift of a policy of insurance, a savings bank book, a non-negotiable or unindorsed bill or note of a third person, a non-negotiable bond, a certificate of stock, or lottery ticket."

This distinction has been received with favor by all the leading text authorities. Brown, Personal Property § 59; 4 Col-

5. Hubbard v. Tod, 171 U.S. 474, 19 S.Ct. 14, 43 L.Ed. 246; In re Rogers, D.C. N.D.W.Va., 20 F.Supp. 120; McNeil v. Tenth Nat. Bank, 46 N.Y. 325. See authorities in Ballentine Corp. Law & Practice (2d Ed.) § 146, footnote 18.

6. Central Union Bank v. New York Underwriters' Ins. Co., 4 Cir., 52 F.2d 823, 78 A.L.R. 494; Jones v. Coates, 8 Cir., 196 F. 860; In re Harvey, D.C.S.D.Ala., 212 F. 340; Stout v. Yaeger Milling Co., C.C.E.D.Mo., 13 F. 802. But see Fidelity Mut. Life Ins. Co. v. City Nat. Bank, D.C.N.D.W.Va., 95 F.Supp. 276, discussed infra in footnote 10.

7. Taft v. Bowker, 132 Mass. 277. See also Cunningham v. Teague, 105 Ind. App. 46, 11 N.E.2d 525; Burnham v. Witt, 217 Cal. 397, 18 P.2d 949; Underwood v. Underwood, 43 Ga.App. 643, 159 S.E. 725.

8. Davis v. Landis, 114 Ind.App. 665, 53 N.E.2d 544. But see In re Richards, D.C.S.D.Cal., 108 F.Supp. 259, 261. This is the only case we have found which passed upon the language of an Assignment of Accounts Receivable statute, in this case § 3017, Cal.Civ.Code, which then provided: " ' "Account" ' means an open book account * * * not represented by a judgment, note, draft, acceptance, or other instrument for the payment of money * * *.' " The court held that a right to a sum of money held as security by a bank under a "Dealer's Agreement" was represented by that informal written contract, so that it was not an "account"; and an assignee of the sum was not required to file under the statute. We agree with the note writer in 41 Cal.L.Rev. 333 that this case carries the idea of embodiment entirely too far. As the note points out, 41 Cal.L.Rev. 334, "The court makes no differentiation, between a right 'reduced to' a written contract and one 'represented by' a written instrument. The former is merely a memorandum of the contract which, except for possible requirements of the Statute of Frauds, exists independently of the written memorandum. The latter has no existence apart from the written instrument 'representing' the right." The opinion does not even state whether the "Dealer's Agreement" was pledged.

9. 2 Williston, Contracts (Rev.Ed.) § 439. This rule is supported by the reasoning of several old English cases which are discussed by Williston in 40 Yale L.J. 1. Of these, see particularly Ward v. Turner, 2 Ves.Sr. 431, 436, 442–443, 28 Eng. Rep. 275, which is part of the common law of Florida. Fla.Stats.Ann. § 2.01.

lier, Bankruptcy (14th Ed.) ¶70.86; 2 Glenn, Fraudulent Conveyances and Preferences (Rev.Ed.) § 526. The Restatement of Contracts § 173(b)(iv) extends this concept of embodiment still further, to any "tangible token or writing, surrender of which is required by the obligor's contract for its enforcement." The Restatement of Security is more conservative, in that it would give this quality only to "indispensable instruments," which are defined in § 1, Comment e, as follows:

> "An indispensable instrument as used in the Restatement of this Subject means the formal written evidence of an interest in intangibles, so representing the intangible that the enjoyment, transfer or enforcement of the intangible depends upon possession of the instrument. If the instrument cannot be produced, the interest which it represents can be effectively asserted only by accounting for the absence of the instrument and obtaining as a substitute for it, either a duplicate or some form of court decree. Indispensable instruments include not only negotiable instruments such as promissory notes and bills of exchange, but also share certificates, bonds, interim certificates, savings bank books and insurance policies. Where the instrument is not an indispensable one, for example, a written assignment of a list of book accounts as security, the interest obtained by the assignee in the accounts is not a pledge."

Section 2, Comment b, and Illustration 7, recognize that non-negotiable indispensable instruments are not restricted to any special categories, and also recognizes a pledge interest even in a paper which might have value as evidence of a right, but is *not* indispensable to enforcing the right. In such a case the pledgee has a pledge interest in the paper, but not in the intangible right; such an interest is said to be in the nature of a "worrying asset." Section 8, Comment a points out that under the Uniform Warehouse Receipts Act, § 42, the Uniform Bills of Lading Act, § 33, and 49 U.S.C.A. § 112, a pledge of goods in the possession of a carrier or warehouseman may be created by delivery of a non-negotiable warehouse receipt or straight bill of lading to the pledgee, upon notification of the carrier or warehouseman. See also Restatement, Trusts, § 163; Restatement, Restitution, § 126, Comment f.

There is a considerable number of cases which support these principles contended for by the texts and Restatements. In Herman v. Connecticut Mutual Life Insurance Co., 218 Mass. 181, 105 N.E. 450, Ann.Cas.1916A, 822, the assignee of an insurance policy who left the policy in the hands of an assignor, in reliance on fraudulent representations of the assignor, was held to have a claim inferior to that of a subsequent pledgee.[10] In Talty v. Freedman's Savings & Trust Co., 93 U.S. 321, 23 L.Ed. 886, the security for a loan was a warrant of the City of Washington, D. C., certifying approval of the borrower's claim against the city. The Supreme Court recognized the lender's interest in this paper, presumably quite similar to the warrants in the present case, as a pledge. The case of Citizens State Bank v. O'Leary, 140 Tex. 345, 353, 167 S.W.2d 719, noted 21 Texas L.Rev. 642, involved the pledge of a "Certificate of Membership" in an unincorporated association, which entitled the member to certain income and $3,000 upon his retirement or death and the surrender and cancellation of the certificate. The certificate also provided that

10. The court's rationale was based upon estoppel nominally, however. Fidelity Mut. Life Ins. Co. v. City Nat. Bank, D.C.N.D.W.Va., 95 F.Supp. 276, reaches a contrary result on facts identical except that in the Fidelity case the first assignee notified the insurance company, and the court said there could be no estoppel. In accord with the Herman case is Atlanta Guano Co. v. Hunt, 100 Tenn. 89, 42 S.W. 482, involving non-negotiable notes; and Jerome v. Eastern Finance Corp., 317 Mass. 364, 58 N.E.2d 122, involving a non-negotiable draft. See also Annotation, 37 A.L.R. 1540.

any assignment without the consent of the association would be void. The court held that a pledgee without the consent of the association has a valid security interest which cut off a prior assignment and unrecorded instrument called a mortgage. In re Vardaman Shoe Co., D.C. E.D.Mo., 52 F.Supp. 562, 565, said that the rule as expressed in Restatement, Contracts § 173 "appear[s] to be sound law". The case of In re Richards, D.C. S.D.Cal., 108 F.Supp. 259, discussed supra in footnote 8, supports our view also, although in our opinion it is incorrectly reasoned and goes much too far.

The Florida authorities are scant. The dictum in Walters & Walker v. Whitlock, 9 Fla. 86, 102, quoted supra, supports to some extent the Restatement theories. On the other hand, another old case, Johnston v. Allen, 22 Fla. 224, 1 Am.St.Rep. 108, tends to the contrary. There the acceptor of a non-negotiable draft paid the payee without demanding delivery thereof, and without notice that previously the payee had transferred the draft to a third person. It was held that the third person could not recover from the acceptor. But that case is not strong authority, since it does not appear that the agreement between the acceptor and the payee was that the draft had to be surrendered to the acceptor to obtain payment. In other words, that draft might simply not have been an indispensable instrument, by the terms of the agreement creating it.[11] (It seems obvious enough from the record in the present case that the warrants were "indispensable instruments," even though that was not stipulated; otherwise there would be little point in the Receiver's attemping to obain an order for Landy to turn them over; and see 31 U.S.C.A. § 528.)

The very fact that the Florida legislature excluded from accounts receivable obligations "represented by" non-negotiable instruments, recognizes the fact that some obligations may be embodied in such instruments. We do not see any compelling reason to limit this embodiment to insurance policies or bonds, but on the contrary think that the better authorities, and certainly the greater number, require us to hold that the possession of the warrants by Landy in the instant case was a pledge of the claim against the Government, a perfected security interest, and was expressly excluded from the statutory requirement of filing of assignments of accounts receivable.

But it does not follow from our holding that Landy's pledge was perfected, that it was not a voidable preference. By the terms of § 60 of the Bankruptcy Act, 11 U.S.C.A. § 96, such a perfected transfer is a preference if it was to secure an antecedent debt, made while the debtor was insolvent and within four months of bankruptcy, giving the transferee a greater percentage of his debt than some other creditor of the same class; and the preference is voidable if the creditor receiving it or his agent acting with reference thereto has, at the time the transfer is made, reasonable cause to believe that the debtor is insolvent. It is clear from the record that the pledge was not a lien or fraudulent transfer under 11 U.S.C.A. § 107, but the record does not provide a sufficient factual basis for us to decide whether or not there was a voidable preference under 11 U.S.C.A. § 96. The record is silent as to when Landy made the loan, as to when the warrants were delivered,[12] as to whether Continental was then insolvent, and as to whether, if so,

---

11. It might not make any difference anyhow, with respect to the relative rights of the pledgee (even of an "indispensable instrument") and the trustee in bankruptcy, if the obligor is held to be discharged by payment in good faith to the pledgor, waiving surrender of the instrument. See In re Rosen, 3 Cir., 157 F.2d 997, 1001, footnote 20. This is an additional reason to discount the authority of Johnston v. Allen, supra.

12. For the statutory provision determining the time the pledge is deemed perfected, see 11 U.S.C.A. § 96, sub. a (7).

**932**

Landy had reasonable cause to believe that Continental was then insolvent.

While this court has the power to reverse the judgment of the trial court with directions to enter a judgment for the other party, because of the failure of the receiver to prove the essential facts to support the trial court's judgment,[13] we consider this to be a case in which we should remand for further proceedings, so that these essential facts may be established if they exist.[14]

Reversed and remanded for further proceedings in accordance with this opinion.

13. 28 U.S.C.A. § 2106: "Determination. The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

14. See Green County v. Quinlan, 211 U.S. 582, 29 S.Ct. 162, 53 L.Ed. 335, and Green County v. Thomas' Executor, 211 U.S. 598, 29 S.Ct. 168, 170, 53 L.Ed. 343. Saltonstall v. Birtwell, 150 U.S. 217, 14 S.Ct. 169, 37 L.Ed. 1128.